[Cite as *State ex rel. Segal v. Elex, Inc.*, 2015-Ohio-5275.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel. Robert N. Segal,  :

      Relator,  :

v.  :  No. 14AP-608

Elex, Inc. and Industrial Commission  :  (REGULAR CALENDAR)
of Ohio,

        :

      Respondents.  :

        :

_____

D E C I S I O N

Rendered on December 17, 2015
_____

*Young, Reverman & Mazzei Co., L.P.A., Martin M. Young* and *Stephen S. Mazzei,* for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.
_____

IN MANDAMUS

BROWN, P.J.

{¶ 1} Relator, Robert N. Segal, has filed an original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for temporary total disability ("TTD") compensation, and to enter an order granting him that compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate who issued the appended decision, including findings of fact and conclusions of law. The magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate the order of its staff hearing officer ("SHO"), dated April 8, 2014, and to enter an order that addresses the

question of whether relator was medically able to return to his former position of employment due to his industrial injury.

{¶ 3} The commission has filed two objections to the magistrate's decision, arguing that the magistrate erred in: (1) requiring that the commission must, in all circumstances, initially determine whether a claimant voluntarily or involuntarily abandoned his former position of employment before considering the issue of whether the claimant voluntarily abandoned the entire workforce, and (2) recommending a limited writ ordering the commission to re-determine the issue of TTD disability when, according to the commission, such order would be a vain act.

{¶ 4} Relator was injured on August 10, 2005 while employed by respondent Elex, Inc. ("Elex") and a workers' compensation claim was allowed for cervical sprain, thoracic sprain, and aggravation of cervical spondylosis. Following the injury, relator received TTD compensation until February 14, 2008, when the commission determined that his allowed conditions had reached maximum medical improvement ("MMI"). In February 2011, relator filed an application for permanent total disability ("PTD") compensation. On March 24, 2011, Dr. E. Gregory Fisher conducted a medical examination and completed a commission form, indicating that relator was capable of performing light work. Relator apparently withdrew his PTD application, and the commission never held a hearing on the application.

{¶ 5} On April 29, 2013, relator underwent surgery of his cervical spine. On October 23, 2013, he applied for a new period of TTD compensation beginning April 29, 2013. On February 27, 2014, the matter came for hearing before a district hearing officer ("DHO"). The DHO made findings that relator last worked in June 2006, and that he filed for and began receiving Social Security Disability Benefits and union disability benefits in July 2006, which he continues to receive. The DHO further cited testimony by relator that he sought employment on one occasion, sometime in 2008 or 2009, and that relator testified "he has made no other attempt to return to the work force." The DHO found that relator "was not in the work force prior to the period of disability requested in this claim." The DHO concluded that "the Injured Worker's actions or more accurately lack of action in trying to find employment since February 2008 shows that the Injured Worker has effectively voluntarily abandoned the work force * * * thereby precluding him from receiving temporary total disability compensation in this claim at this time." The

matter came for hearing before an SHO on April 8, 2014, and the SHO issued an order affirming the order of the DHO.

{¶ 6} In recommending that this court issue a limited writ of mandamus, the magistrate concluded that the DHO erred in failing to determine whether relator's departure from Elex was injury induced. The magistrate, citing the DHO's finding that relator was not employed on the date of his April 29, 2013 surgery, found that the DHO's reasoning "improperly assumes that relator's departure from Elex, Inc., was not injury-induced and therefore was voluntary."

{¶ 7} The commission argues that findings by the DHO and SHO, indicating that relator was not in the workforce at the time of his requested TTD period, are not dispositive in light of evidence supporting the commission's determination that relator voluntarily abandoned the entire workforce. The commission contends the DHO and SHO properly relied on *State ex rel. Corman v. Allied Holdings, Inc.,* 132 Ohio St.3d 202, 2012-Ohio-2579, and *State ex rel. Roxbury v. Indus. Comm.,* 138 Ohio St.3d 91, 2014-Ohio-84, in determining that relator abandoned the entire workforce.

{¶ 8} Under Ohio law, "[a] temporary total disability is one that prevents an employee from returning to his or her former position of employment. * * * It must arise from a condition that was caused by the industrial injury and that has not reached maximum medical improvement." *State ex rel. Lackey v. Indus. Comm.,* 129 Ohio St.3d 119, 2011-Ohio-3089, ¶ 10. Eligibility for such compensation "depends on whether the separation from employment was injury-induced." *Id.* If it was not injury induced, a claimant may only receive TTD compensation "if he or she has found other employment and is later prevented from doing that job by a flare-up of the original industrial injury." *Id.,* citing *State ex rel. Baker v. Indus. Comm.,* 89 Ohio St.3d 376, 384 (2000). If claimant's departure "was related to the injury, it is not necessary for the claimant to first obtain other employment, but it is necessary that the claimant has not foreclosed that possibility by abandoning the entire workforce." *Lackey* at ¶ 11. This is because TTD "compensates for 'the loss of earnings which [a claimant] incurs while the injury heals,' " and when a worker "voluntarily exits the labor market, 'he no longer incurs a loss of earnings because he is no longer in a position to return to work.' " *Id.,* quoting *State ex rel. Ashcraft v. Indus. Comm.,* 34 Ohio St.3d 42, 44 (1987).

{¶ 9}  In the present case, the SHO cited two cases, *Corman* and *Roxbury,* in support of the TTD determination.  In *Roxbury,* the claimant was injured in 2004, and a claim was allowed for lumbar sprain and related injuries.  The claimant collected TTD compensation until July 10, 2006 when the commission concluded that her injuries had reached MMI.  The claimant subsequently filed an application for PTD compensation, which the commission denied in 2009 based on a finding that none of her allowed conditions rendered her totally unable to work.  The claimant later filed a request for reinstatement of TTD compensation on the basis that she was disabled as a result of an allowed psychological condition.  The commission denied the request, finding that the claimant had voluntarily abandoned the entire workforce.  The claimant filed a complaint in mandamus, and this court held that the commission did not abuse its discretion in failing to award TTD compensation.  *See State ex rel. Roxbury v. Indus. Comm.,* 10th Dist. No. 11AP-125, 2012-Ohio-1310.

{¶ 10} On appeal to the Supreme Court of Ohio, the claimant argued that she did not voluntarily abandon the workforce, but, rather, had been physically unable to return to work since 2004 due to her industrial injury.  In *Roxbury,* 2014-Ohio-84, the Supreme Court held that the evidence supported the commission's TTD determination.  Specifically, the court noted that the commission, in a 2006 order, concluded the claimant's physical injuries had reached MMI, but the claimant "did not pursue an appeal of that finding," and that in 2009 the commission denied the claimant's request for PTD compensation based on a finding that "Roxbury remained physically capable of sedentary work" and the allowed psychological condition was not disabling.  *Id.* at ¶ 13.  Further, there was no evidence the claimant sought other work or attempted vocational rehabilitation.  The Supreme Court determined that "the commission did not abuse its discretion when it concluded that Roxbury was no longer a part of the labor market and that her lack of earnings was not the result of her psychological condition."  *Id.*

{¶ 11} Under the facts of *Corman,* the claimant suffered a work-related injury in 2002 and retired one year later from Allied Holdings.  The claimant never worked again, and the record contained "no evidence that he was medically incapable of other work."  *Id.* at ¶ 2.  In 2009, the commission denied the claimant's request to have TTD compensation reinstated; the commission noted that the claimant never sought other work after leaving Allied Holdings, "thus demonstrating his intent to permanently abandon the labor

market."  *Id.*  The claimant filed a complaint in mandamus, and this court denied the writ.  *See State ex rel. Corman v. Allied Holdings, Inc.,* 10th Dist. No. 10AP-38, 2010-Ohio-5153.

{¶ 12} On appeal, the Supreme Court found similarities between the facts before it and the facts in *State ex rel. Pierron v. Indus. Comm.,* 120 Ohio St.3d 40, 2008-Ohio-5245, in which the court had held that the lack of evidence of a claimant's search for other employment following his retirement supported the commission's decision that the claimant had permanently abandoned the workforce.  Those similarities included the fact that (1) both claimants sought TTD "years after retiring from their former positions of employment," (2) during those intervening years, "neither individual made a credible effort to secure other employment," and (3) "[n]either claimant produced evidence of a medical inability to perform other work during those years, prompting the commission to conclude in each case that the claimant had permanently left the work force."  *Corman,* 2012-Ohio-2579, at ¶ 6.

{¶ 13} In *Corman,* the claimant attempted to distinguish *Pierron* based upon the claimant's contention that "he retired from his former position of employment with Allied Holdings because of his injury—a claim that was not made in *Pierron.*"  *Corman,* 2012-Ohio-2579, at ¶ 7. The Supreme Court, however, did not find such distinction determinative.  While noting that the commission "did not find that Corman's departure from Allied Holdings was injury-induced," the Supreme Court held that "*even if it had,* it would not advance his cause" because, "[a]s in *Pierron,* there was no evidence of a medical inability to perform other work in the years between Corman's departure from Allied Holdings and his request for [TTD]."  (Emphasis added.)  *Id.*  Rather, the court held, "Corman had the same choice as Pierron—seek other employment or work no further.  When Corman elected the latter, he eliminated the possibility of, or potential for, lost wages."  *Id.*  Corman could not, therefore, "credibly assert that he has lost income due to his industrial injury."  *Id.*

{¶ 14} In the present case, as noted by the magistrate, the DHO made a finding that relator was not in the workforce at the time of his 2013 surgery and, as also noted by the magistrate, such finding was made without a determination of whether the departure from Elex was injury induced.  However, based upon the record in this case, we agree with

the commission that the issue of whether relator voluntarily or involuntarily abandoned his former position of employment at Elex is not dispositive of the TTD determination.

{¶ 15} A claimant's eligibility for TTD compensation "depends not only on whether the claimant is unable to perform the duties of the position of employment, but also on whether the claimant continues to be a part of the active workforce." *State ex rel. Floyd v. Formica Corp.,* 140 Ohio St.3d 260, 2014-Ohio-3614, ¶ 14. The issue of whether an injured worker permanently abandoned the entire job market "is a factual question for the commission that depends primarily on what the claimant intended." *Id.* at ¶ 16.

{¶ 16} As noted under the facts of this case, there was evidence before the commission indicating that (1) relator last worked in 2006, (2) he applied for and was granted Social Security Disability Benefits and union disability benefits in July 2006, (3) the allowed conditions reached MMI in February 2008, (4) relator testified he made one attempt, in 2008, to obtain other work, (5) he applied for PTD compensation in 2011, at which time Dr. Fisher determined that relator was capable of sedentary and light-duty work, and (6) relator did not make any attempt to return to work subsequent to that examination. Here, similar to *Corman,* 2012-Ohio-2579, even if the commission had determined that relator's departure was injury induced, "it would not advance his cause" as there was evidence before the commission that relator was medically capable of performing other work (i.e., sedentary and light-duty work) in the intervening years since his injury, but that he had not made a credible attempt to return to the workforce. *Corman,* 2012-Ohio-2579 at ¶ 7. Accordingly, we find no abuse of discretion by the commission in concluding that relator's "actions or * * * lack of action in trying to find employment since February 2008 shows that the Injured Worker has effectively voluntarily abandoned the work force."

{¶ 17} Based upon the foregoing, we sustain the commission's objections. We therefore adopt the magistrate's findings of fact, but not the conclusions of law. Accordingly, relator's request for a writ of mandamus is hereby denied.

*Objections sustained; writ denied.*

SADLER, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 18} I respectfully dissent from the opinion of the majority and would adopt the magistrate's legal as well as factual findings in his report. The nature of the work performed by relator was as an electrician. As such, he was a member of a union local within the building trades labor federation of skilled construction workers that eventually secured retirement benefits for him in order to provide him with sufficient financial means. After he was injured on the job and awarded temporary total disability ("TTD") compensation for a period of time, he was involuntarily laid off by the employer with whom he experienced his compensable injuries, and under the union contract, there was not work available of the type he was permitted to do in light of his compensable injuries.

{¶ 19} The nature of unionized work in the building trades permits the local union representing a particular type of skilled labor (e.g., electricians, iron workers, glazers, cement masons, plumbers and pipefitters, roofers, among many others) to secure employment for its members, because the union collectively bargains on behalf of its members for standardized wages and benefits, among other work-related issues and conditions, with a group of employers. This type of arrangement works for both, because construction is not always a consistent or ongoing process for a particular employer, workers do become injured on the job and the need for meeting construction schedules and engaging in multiple construction projects calls for the ready availability of skilled tradespeople. Some building and construction trades jobs exist on an ongoing basis with some employers. In any case, when one job ends, the worker generally reports to the skilled trades union to find other employment. None of this was recognized or addressed by the district hearing officer ("DHO"), the staff hearing officer ("SHO"), or the Industrial Commission of Ohio ("commission") in determining job abandonment versus workforce abandonment.

{¶ 20} Relator states in his affidavit, "I was involuntarily laid off because, as the result of my residual impairment from the allowed conditions in my claim, I was unable to perform my regularly assigned work duties as a union electrician. * * * My Employer advised me that unless I was released for full duty, there was no work available for me within my restrictions. I also spoke and met with my Union steward who also advised me that unless I was released for full duty with no restrictions there was no work

available for me. I was involuntarily removed from my employment with Elex, Inc., as well as any similar type work. * * * I did unsuccessfully seek other work within my restrictions but was unable to find work. * * * Having no other viable option to financially support myself, I reluctantly applied for my union disability retirement pension and for Social Security disability benefits * * * based upon the residual impairment from my allowed conditions."

{¶ 21} The DHO made no specific factual findings on whether relator's departure from his employer with whom he experienced the injury was injury induced. In finding voluntary workforce abandonment, the DHO relied on his finding that relator was not employed at the time of the beginning of the disability alleged to qualify him for a second round of TTD compensation. The SHO's findings compounded the error when the SHO found that relator was ineligible for TTD compensation " 'because he was not in the workforce at that time' " and " ' does not have wages to replace in April of 2013' " when he underwent further surgery, which according to the magistrate, was "another way of saying that relator had to have been employed in another job in April of 2013 in order to avoid a finding that he has voluntarily abandoned the workforce." (Appended Magistrate's Decision, ¶ 76.)

{¶ 22} More factual determination was needed concerning the nature of relator's work as a union electrician and the applicability and availability of the work he was medically permitted to do after being denied TTD, as compared to the actual requirements for work available within the union local's contracts with other employers. Moreover, there was no factual exploration of whether the 2013 surgery could have made it easier for him to work at or beyond his previously determined level of maximum medical improvement, such that TTD could have actually helped to better prepare him for a return to work, at whatever the appropriate level. None of this was addressed by the DHO, the SHO, or the commission. The failure to make the relevant factual findings resulted in a misapplication of the law, and the misapplication of the law was the basis for the magistrate recommending that we grant the writ of mandamus. For these reasons, I would overrule respondent's objections and adopt the decision of the magistrate, granting the writ of mandamus.

_____

[Cite as *State ex rel. Segal v. Elex, Inc.*, 2015-Ohio-5275.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Robert N. Segal, | : | |
| Relator, | : | |
| v. | : | No. 14AP-608 |
| Elex, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 10, 2015

*Young, Reverman & Mazzei Co., L.P.A., Martin M. Young* and *Stephen S. Mazzei,* for relator.

*Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

**{¶ 23} In this original action, relator, Robert N. Segal, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning April 29, 2013 on grounds that he is ineligible for the compensation, and to enter an order that addresses the question of whether he was medically able to return to his former position of employment due to his industrial injury.**

<u>Findings of Fact</u>:

{¶ 24} 1.  On August 10, 2005, relator injured his cervical and thoracic areas while employed as an electrician for respondent, Elex, Inc., a state-fund employer.   On that date, relator was sitting on a bucket truck which was hit by another truck.

{¶ 25} 2.  The industrial claim (No. 05-894617) is allowed for "cervical sprain; thoracic sprain; aggravation [of] cervical spondylosis C3-4, C4-5, C5-6 and C6-7."

{¶ 26} 3.  Relator began receiving TTD compensation.

{¶ 27} 4.  On January 9, 2008, the Ohio Bureau of Workers' Compensation ("bureau") moved for termination of TTD compensation based upon a medical report from Dr. Haverkos.

{¶ 28} 5.  Following a February 14, 2008 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation on grounds that the allowed conditions of the industrial claim have reached maximum medical improvement ("MMI").   The DHO relied upon the report of Dr. Haverkos.   Apparently, the DHO's order of February 14, 2008 was not administratively appealed.

{¶ 29} 6.  In February 2011, relator filed an application for permanent total disability ("PTD") compensation.

{¶ 30} 7.  On March 24, 2011, at the commission's request, relator was examined by E. Gregory Fisher, M.D.   In his seven-page narrative report, Dr. Fisher opines that relator has an eight percent whole body impairment arising from the allowed conditions of the industrial claim.

{¶ 31} 8.  On March 24, 2011, Dr. Fisher completed a commission form captioned "Physical Strength Rating."   On the form, Dr. Fisher indicated by his mark that relator is capable of light work.

{¶ 32} 9.  Apparently, relator withdrew his PTD application and, thus, no hearing on the application was ever held.

{¶ 33} 10.  On April 29, 2013, relator underwent surgery to his cervical spine.  The surgery was performed by J. Byron Davidson, D.O.

{¶ 34} 11.  On July 19, 2013, Dr. Davidson completed a bureau form captioned "Physician's Report of Work Ability" which the bureau designates as a "Medco-14."

{¶ 35} On the form, Dr. Davidson indicated by his mark that, "Injured worker is temporarily not released to any work, including the former position of employment * * * ."

Dr. Davidson further indicated that the period of disability was from April 29 to July 23, 2013.

{¶ 36} 12. On October 23, 2013, relator moved for TTD compensation starting April 29, 2013.   In support of the motion, relator submitted Dr. Davidson's operative report and the Medco-14 dated July 19, 2013.

{¶ 37} 13. On December 12, 2013, relator executed an affidavit averring:

> [Two] Contrary to the rational set forth in the Bureau referral letter of 11-18-2013, I have not voluntarily abandoned either my former position of employment or the work force generally.
>
> [Three] As set forth in the Bureau file note of 11-16-2013, I indicated in my pending PTD application that I had been laid off from my former position of employment with my employer, Elex, Inc. I was involuntarily laid off because, as the result of my residual impairment from the allowed conditions in my claim, I was unable to perform my regularly assigned work duties as a union electrician.
>
> [Four] I was not provided any alternative work options to remain employed with my Employer. My Employer advised me that unless I was released for full duty, there was no work available for me within my restrictions. I also spoke and met with my Union steward who also advised me that unless I was released for full duty with no restrictions there was no work available for me. I was involuntarily removed from my employment with Elex, Inc., as well as any similar type work.
>
> [Five] I did unsuccessfully seek other work within my restrictions but was unable to find work.
>
> [Six] Following my involuntary lay-off from the Employer, I did attempt to obtain work within my residual functional capacity arising from the allowed conditions in my claim. Despite these efforts, I was unable to obtain work.
>
> [Seven] Having no other viable option to financially support myself, I reluctantly applied for my union disability retirement pension and for Social Security disability benefits. These disability retirement benefits are being paid to me based upon the residual impairment from my allowed conditions.

[Eight] The sole reason why I was forced to seek these disability retirement benefits was that I was involuntarily removed from the work force due to the residuals of the allowed conditions in my claim.

[Nine] Based upon the foregoing, I assert that I did not voluntarily abandon either my former position of employment or the work force in general.

[Ten] Due to financial reasons, I now permanently reside in the State of Florida. I do not have the financial means to return to Ohio for hearings on my claim and I respectfully request that this affidavit be accepted in lieu of my testimony.

{¶ 38} 14. Following a February 27, 2014 hearing, a DHO issued an order denying relator's motion for TTD compensation on eligibility grounds. The DHO's order indicates that relator appeared "by telephone" with his counsel. The DHO's order explains:

The District Hearing Officer hereby denies the Injured Worker's C-86 Motion, filed 10/23/2013, which requested the Injured Worker be provided temporary total disability compensation from 04/29/2013 through the date of this hearing, 02/27/2014, and continuing. The District Hearing Officer finds that the Injured Worker failed to satisfy his burden of proving by a preponderance of the evidence that he is entitled to temporary total disability compensation in this claim a[t] this time.

The District Hearing Officer finds that the Injured Worker was initially injured on 08/10/2005. The Injured Worker last worked in June of 2006. The District Hearing Officer finds that the Injured Worker testified at the hearing that he has not returned to work in any capacity since June of 2006. In addition, the Injured Worker filed for and began receiving social security disability benefits and union disability pension benefits in July 2006, which he continues to receive to this date.

Pursuant to Industrial Commission order, issued 02/14/2008, the Injured Worker was found to have reached maximum medical improvement for the allowed conditions in this claim effective 02/14/2008.
The District Hearing Officer notes that the Injured Worker testified at the hearing that, since February 2008, he sought employment on one occasion, which was sometime in 2008

or 2009. The Injured Worker further testified that he has made no other attempt to return to the work force.

The District Hearing Officer notes that the Injured Worker underwent a surgical procedure on 04/29/2013 for the allowed cervical conditions in this claim. The Injured Worker's request for temporary total disability compensation is based on this neck injury.

The District Hearing Officer finds that a key tenent regarding temporary total disability compensation is that an injured worker's work related injuries must remove the injured worker from employment. The District Hearing Officer finds that this requirement for temporary total disability compensation can not be satisfied if an injured work is not employed at the time of the beginning of the alleged period of disability.

In this claim, the District Hearing Officer finds that the Injured Worker has not provided sufficient evidence that he has tried to be employed since February 2008. To the contrary, the Injured Worker has been receiving social security disability benefits and union disability pension benefits since that time. The District Hearing Officer finds that the Injured Worker was not removed from the work force as a result of the neck surgery. Rather, the District Hearing Officer finds that the Injured Worker's work status was not effective [sic] by the neck surgery as the Injured Worker was not in the work force prior to the period of disability requested in this claim. The District Hearing Officer finds that the Injured Worker's actions or more accurately lack of action in trying to find employment since February 2008 shows that the Injured Worker has effectively voluntarily abandoned the work force and thereby precluding him from receiving temporary total disability compensation in this claim at this time.

Based on the foregoing, the District Hearing Officer finds the Injured Worker has failed to satisfy his burden of proving him [sic] entitlement to temporary total disability compensation in this claim. Therefore, the District Hearing Officer finds the Injured Worker is not entitled to temporary total disability compensation for the time period requested and the Injured Worker's request for temporary total disability compensation is hereby denied.

> This decision is based on a lack of evidence of the Injured Worker's employment since February 2008, <u>Corman v. Allied Holdings, Inc.</u> (2012), 132 Ohio St.3d 202, <u>State ex rel. Pierron v. Indus. Comm.</u> (2008), 120 Ohio St.3d 40, and <u>State ex rel. Eckerly v. Indus. Comm.</u> (2005), 105 Ohio St.3d 428.

{¶ 39} 15. Relator administratively appealed the DHO's order of February 27, 2014. Following an April 8, 2014 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order is "affirmed" and that relator's motion is denied. The SHO's order explains:

> This request for the payment of temporary total disability compensation is based upon a surgical procedure for the allowed conditions in the claim that the Injured Worker had on 04/29/2013. The Hearing Officer finds that the Injured Worker is not eligible for the payment of temporary total disability compensation because he was not in the workforce at that time.
>
> By way of background, this injury occurred in 2005. Following this injury, the Injured Worker received temporary total disability compensation. The Industrial Commission terminated temporary total disability compensation in February of 2008 based upon a finding of maximum medical improvement.
>
> The Injured Worker testified at hearing that he has not worked anywhere since 2006. He testified that [he] attempted to seek work sometime in 2008 as a foreman, but was unable to find work. Subsequently, he applied for and was granted Social Security Disability benefits, as well as a union disability benefit. In 2011, the Injured Worker applied for a [sic] permanent total disability benefits and he was examined by Dr. Fisher on 03/24/2011. Dr. Fisher indicated at that time that the Injured Worker was able to perform sedentary and light work activities. The Injured Worker has not made any attempt to return to work since subsequent to this exam.
>
> The Hearing Officer finds that the purpose of temporary total disability compensation is [to] replace the wages lost by an Injured Worker. In this case, the Injured Worker does not have wages to replace in April of 2013. The Hearing Officer finds that he has been out of the workforce since at least 2008. The Hearing Officer finds he is not entitled to the

> payment of temporary total disability compensation to replace wages when he was not receiving any wages. Therefore, the Hearing Officer orders that the request for the payment of temporary total disability compensation is denied.
>
> This order is based upon the Injured Worker's testimony at hearing, <u>Roxbury v. [I]ndus. Comm.</u> (2014), 138 Ohio St.3d 91, and <u>Corman v. Allied Holdings, Inc.</u> (2012), 132 Ohio St.3d 202.

{¶ 40} 16. On May 7, 2014, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 8, 2014.

{¶ 41} 17. On June 5, 2014, the three-member commission mailed an order denying relator's request for reconsideration.

{¶ 42} 18. On August 1, 2014, relator, Robert N. Segal, filed this mandamus action.

<u>Conclusions of Law</u>:

{¶ 43} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 44} Two separate but related concepts have evolved through judicial decisions addressing the eligibility of a workers' compensation claimant for TTD compensation. Those two concepts are job abandonment and workforce abandonment. Because the distinction of these two concepts is important to the analysis of the commission's decision in this action, the magistrate shall endeavor to set forth the relevant case law that defines the two concepts.

### Basic Law: Job Abandonment

{¶ 45} Historically, this court first held that, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued TTD benefits since it is his own action, rather than the industrial injury, which prevents his returning to his former position of employment. *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.,* 29 Ohio App.3d 145 (10th Dist.1985). The *Jones & Laughlin* rationale was adopted by the Supreme Court of Ohio in *State ex rel. Ashcraft v. Indus. Comm.,* 34 Ohio St.3d 42 (1987), wherein the court recognized a "two-part test" to determine whether an injury qualified for TTD compensation. *Ashcraft* at 44. The first part of the test focuses upon the disabling aspects of the injury whereas the latter part determines if there are any other factors, other than

the injury, which prevent the claimant from returning to his former position of employment. *Id.*

{¶ 46} In *State ex rel. Rockwell Internatl. v. Indus. Comm.,* 40 Ohio St.3d 44 (1988), the court held that an injury-induced abandonment of the former position of employment, as in taking a retirement, is not considered to be voluntary.

{¶ 47} In *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401, 403 (1995), the claimant was fired for violating the employer's policy prohibiting three consecutive unexcused absences. The court held that the claimant's discharge was voluntary, stating:

> [W]e find it difficult to characterize as "involuntary" a termination generated by the claimant's violation of a written work rule or policy that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable offense, and (3) was known or should have been know to the employee. Defining such an employment separation as voluntary comports with Ashcraft and [*State ex rel. Watts v. Schottenstein Stores Corp.,* 68 Ohio St.3d 118 (1993)]—i.e., that an employee must be presumed to intend the consequences of his or her voluntary acts.

{¶ 48} The syllabus of *State* ex *rel. McCoy v. Dedicated Transport Inc.,* 97 Ohio St.3d 25, 2002-Ohio-5305, states:

> A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.

{¶ 49} The *McCoy* holding was further explained by the court in *State ex rel. Eckerly v. Indus. Comm.,* 105 Ohio St.3d 428, 2005-Ohio-2587. In that case, the claimant, Shawn E. Eckerly, was fired from his job for unexcused absenteeism. Thereafter, the commission declared that the discharge constituted a voluntary abandonment of his employment under *Louisiana-Pacific,* and denied TTD compensation. Citing *McCoy,* the

*Eckerly* court upheld the commission's denial of TTD compensation. The *Eckerly* court explains:

> The present claimant seemingly misunderstands *McCoy*. He appears to believe that so long as he establishes that he obtained another job-if even for a day-at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to *McCoy* and all other TTC cases before and after: that the industrial injury must remove the claimant from his or her job. This requirement obviously cannot be satisfied if claimant had no job at the time of the alleged disability.

(Emphasis sic.) *Id.* at ¶ 9.

### Basic Law: Workforce Abandonment

{¶ 50} The seminal case on workforce abandonment as it relates to TTD compensation is *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245. Accordingly, a review of the *Pierron* case is in order.

{¶ 51} In *Pierron,* the claimant, Richard Pierron, was seriously injured in 1973 while working as a telephone lineman for Sprint/United Telephone Company ("Sprint/United").

{¶ 52} After Pierron's injury, his doctor imposed medical restrictions that were incompatible with his former position of employment as a lineman. Sprint/United offered Pierron a light-duty job consistent with those restrictions and Pierron continued to work in that position for the next 23 years.

{¶ 53} In 1997, Sprint/United informed Pierron that his light-duty position was being eliminated. Sprint/United did not offer Pierron an alternative position, but did give him the option to retire or be laid off. Pierron chose retirement.

{¶ 54} In the years that followed, Pierron remained unemployed except for a brief part-time stint as a flower delivery person. In later 2003, he moved for TTD compensation beginning June 17, 2001.

{¶ 55} Ultimately, the three-member commission determined that Pierron had voluntarily abandoned the workforce when he retired in 1997. Pierron then filed a mandamus action in this court. This court denied the writ and Pierron appealed as of right to the Supreme Court of Ohio.

{¶ 56} In affirming the judgment of this court and thus upholding denial of the writ, the *Pierron* court explained:

> We are confronted with this situation in the case before us. The commission found that after Pierron's separation from Sprint/United, his actions—or more accurately inaction—in the months and years that followed evinced an intent to leave the work force. This determination was within the commission's discretion. Abandonment of employment is largely a question " 'of intent * * * [that] may be inferred from words spoken, acts done, and other objective facts.' " *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.* (1989), 45 Ohio St.3d 381, 383, 544 N.E.2d 677, quoting *State v. Freeman* (1980), 64 Ohio St.2d 291, 297, 18 O.O.3d 472, 414 N.E.2d 1044. In this case, the lack of evidence of a search for employment in the years following Pierron's departure from Sprint/United supports the commission's decision.
>
> We recognize that Pierron did not initiate his departure from Sprint/United. We also recognize, however, that there was no causal relationship between his industrial injury and either his departure from Sprint/United or his voluntary decision to no longer be actively employed. When a departure from the entire work force is not motivated by injury, we presume it to be a lifestyle choice, and as we stated in *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 216, 648 N.E.2d 827, workers' compensation benefits were never intended to subsidize lost or diminished earnings attributable to lifestyle decisions. In this case, the injured worker did not choose to leave his employer in 1997, but once that separation nevertheless occurred, Pierron had a choice: seek other employment or work no further. Pierron chose the latter. He cannot, therefore, credibly allege that his lack of income from 2001 and beyond is due to industrial injury. Accordingly, he is ineligible for temporary total disability compensation.

*Id.* at ¶ 10-11.

{¶ 57} Within four years of the *Pierron* decision, the Supreme Court of Ohio had occasion to apply that decision in *State ex rel. Corman v. Allied Holdings, Inc.,* 132 Ohio St.3d 202, 2012-Ohio-2579.

{¶ 58} In *Corman,* the claimant, Ronald R. Corman, retired from his employment with Allied Holdings a year after his 2002 work injury. The record contains no evidence that he was medically incapable of other work.

{¶ 59} In 2009, the commission denied Corman's request for reinstatement of TTD compensation. The commission found, among other things, that Corman's retirement was voluntary and unrelated to his industrial injury. The commission noted that Corman never sought other work in the years after he left Allied Holdings, thus demonstrating his intent to permanently abandon the labor market.

{¶ 60} Corman filed a mandamus action in this court which ultimately denied the writ. Corman appealed as of right to the Supreme Court of Ohio.

{¶ 61} In affirming the judgment of this court and upholding the denial of the writ, the *Corman* court explained:

> There are important similarities between the case before us and *Pierron.* Both claimants sought TTC years after retiring from their former positions of employment. In those intervening years, neither individual made a credible effort to secure other employment. Neither claimant produced evidence of a medical inability to perform other work during those years, prompting the commission to conclude in each case that the claimant had permanently left the work force.
>
> * * *
>
> Corman's attempt to distinguish *Pierron* is not persuasive. Corman contends that he retired from his former position of employment with Allied Holdings because of his injury—a claim that was not made in *Pierron.* The commission, however, did not find that Corman's departure from Allied Holdings was injury-induced, but even if it had, it would not advance his cause. As in *Pierron,* there was no evidence of a medical inability to perform other work in the years between Corman's departure from Allied Holdings and his request for TTC, so Corman had the same choice as Pierron—seek other employment or work no further. When Corman elected the latter, he eliminated the possibility of, or potential for, lost wages. He cannot, therefore, credibly assert that he has lost income due to his industrial injury.

*Id.* at ¶ 6-7.

{¶ 62} Another case, *State ex rel. Lackey v. Indus. Comm.,* 129 Ohio St.3d 119, 2011-Ohio-3089, is significant because it explains the importance of determining whether the separation from employment was injury-induced on the subsequent question of workforce abandonment.

{¶ 63} The claimant, Juan L. Lackey, injured his knee at work in 2001. Lackey drove trucks for Penske Truck Leasing Company, L.L.P. ("Penske"). Knee surgery was performed in 2003 and Lackey missed two months of work.

{¶ 64} Upon his return to work, Lackey drove full time for the next 15 months. During that time, he moved for the allowance of additional knee conditions, and on July 27, 2004, filed retirement papers with Penske. Nothing in the retirement papers indicated that the retirement was connected to the industrial injury. Lackey continued to work full time for the next three months until the retirement became effective on October 31, 2004.

{¶ 65} In December 2004, Lackey's claim was allowed for additional knee injuries. In November 2005, Lackey again had knee surgery and he requested that TTD compensation be reinstated.

{¶ 66} The DHO denied the request after finding that Lackey had voluntarily retired from his former position of employment for reasons unrelated to his industrial injury. The DHO found that at the time of the retirement, there was no medical evidence indicating that Lackey's industrial injury affected his ability to work.

{¶ 67} The DHO also found that Lackey's retirement constituted a voluntary abandonment of the entire labor market. On appeal, an SHO elaborated on that finding, stressing that in the 17 months since Lackey had retired, he had not looked for other work. The SHO also felt that Lackey's testimony also evinced an intention not to work again.

{¶ 68} After the three-member commission refused further appeal, Lackey filed a mandamus action in this court. This court denied the writ. Lackey then took an appeal as of right to the Supreme Court of Ohio.

{¶ 69} In affirming the judgment of this court and denying the writ, the Lackey court explained:

> Eligibility for compensation under these circumstances depends on whether the separation from employment was injury-induced. If it was not, a claimant may receive TTC

only if he or she has found other employment and is later prevented from doing that job by a flare-up of the original industrial injury. *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 384, 732 N.E.2d 355. If departure was related to the injury, it is not necessary for the claimant to first obtain other employment, but it is necessary that the claimant has not foreclosed that possibility by abandoning the entire workforce. Id. at 383-384. That is because TTC compensates for "the loss of earnings which [a claimant] incurs while the injury heals." *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533. When a worker voluntarily exits the labor market, "he no longer incurs a loss of earnings because he is no longer in a position to return to work." *Id.*

Lackey alleges that he left Penske because of his industrial injury. The commission found otherwise and also found that when Lackey left Penske, he retired from the larger labor market as well. Review supports the commission's order.

There is no medical evidence indicating that when Lackey filed for retirement, his ability to perform his regular duties was adversely affected by his industrial injury. To the contrary, Lackey worked full-time for nearly a year before submitting his retirement notice and continued to work in that same capacity for another three months. This is hardly consistent with a condition so debilitating as to force an individual prematurely from his job.

\* \* \*

The commission did not abuse its discretion in finding that Lackey's retirement was unrelated to his injury. Accordingly, Lackey could receive postretirement TTC only if he were gainfully employed elsewhere and prevented from doing that job by his industrial injury. That did not occur.

*Id.* at ¶ 11-13, 15.

## Analysis

{¶ 70} Analysis of the instant case begins with a review of the DHO's order of February 27, 2014, which the SHO's order of April 8, 2014 affirmed.

{¶ 71} Notwithstanding relator's affidavit averring that his departure from employment with Elex, Inc., was injury-induced and therefore involuntary, the DHO failed to determine whether the departure from Elex, Inc., was injury-induced.

{¶ 72} Rather, the DHO reached the conclusion that relator has "effectively voluntarily abandoned the workforce" without a determination of whether the departure from Elex, Inc., was voluntary or involuntary. In reaching his conclusion that relator has voluntarily abandoned the workforce, the DHO relied upon his finding that relator was "not employed at the time of the beginning of the alleged period of disability." That is, relator was not employed on the date of his April 29, 2013 surgery upon which his claim for TTD compensation is premised. Significantly, one of the three cases cited by the DHO is *State ex rel. Eckerly v. Indus. Comm.,* 105 Ohio St.3d 428 (2005), a case that was not cited in the SHO's order of April 8, 2014 that affirms the DHO's order.

{¶ 73} The problem here is that the DHO's reasoning improperly assumes that relator's departure from Elex, Inc., was not injury-induced and therefore was voluntary. As the *Lackey* case makes clear, if relator's departure from Elex, Inc., was related to his injury, it is not necessary for relator to first obtain other employment, but it is necessary that relator has not foreclosed that possibility by abandoning the entire workforce. The DHO erred by requiring relator to be employed at the time of his surgery in order to preclude a finding of a voluntary abandonment of the workforce.

{¶ 74} While *Eckerly* and *McCoy*, do require that the claimant re-enter the workforce, that requirement only applies where the claimant has voluntarily abandoned his former position of employment. Because the DHO's order of February 27, 2014 fails to determine whether the departure from Elex, Inc., was injury-induced, *Eckerly* and *Mccoy* are inapplicable.

{¶ 75} In short, the DHO's order of February 27, 2014 inappropriately applies the case law regarding job abandonment to the issue of workforce abandonment.

{¶ 76} As earlier noted, the SHO's order of April 8, 2014 affirms the DHO's order of February 27, 2014. The SHO's order repeats the error made by the DHO. That is, the SHO incorrectly holds that relator is ineligible for TTD compensation "because he was not in the workforce at that time." The SHO further states that relator "does not have wages to replace in April of 2013," which is another way of saying that relator had to have been

employed in another job in April of 2013 in order to avoid a finding that he has voluntarily abandoned the workforce. Thus, the SHO's order repeats the error contained in the DHO's order.

{¶ 77} Here, citing to *Pierron* and *Corman,* the commission endeavors to defend its decision by pointing to the fact that, despite the March 24, 2011 opinion of Dr. Fisher that relator is medically able to perform light-work, relator made no attempt to return to work subsequent to Dr. Fisher's report. Also, it is pointed out that, after it was determined that his industrial injury had reached MMI in February 2008, relator sought employment on only one occasion as a foreman sometime in 2008.

{¶ 78} While relator's employment history subsequent to his departure from Elex, Inc., may indeed be relevant to the question of whether he may have voluntarily abandoned the workforce, that alone cannot be used to support workforce abandonment when the commission's hearing officers applied the wrong law to reach its determination of workforce abandonment.

{¶ 79} Based upon the above analysis, the magistrate concludes that the commission abused its discretion in determining that relator is ineligible for the requested TTD compensation.

{¶ 80} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of April 8, 2014, and to enter a new order consistent with this magistrate's decision that appropriately determines relator's eligibility for TTD compensation. If the commission determines that relator is eligible for the compensation, the commission shall also render a determination of whether the medical evidence relating to the surgery supports an award of TTD compensation.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).