THE STATE EX REL. JACOBS, APPELLANT, *v.* INDUSTRIAL COMMISSION

OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Jacobs v. Indus. Comm.,* **139 Ohio St.3d 86,**

**2014-Ohio-1560.**]

*Workers' compensation—Temporary-total-disability compensation—Voluntary abandonment of the work force—Court of appeals' judgment denying a writ of mandamus affirmed.*

(No. 2012-1554—Submitted December 11, 2013—Decided April 15, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-262,

2012-Ohio-3763.

_____

**Per Curiam**.

**{¶ 1}** Appellant, Wanda Jacobs, appeals the judgment of the court of appeals denying her request for a writ of mandamus to require appellee Industrial Commission to vacate its order denying her temporary-total-disability compensation and to award compensation for the period beginning December 30, 2006.

**{¶ 2}** The court of appeals determined that the commission's order was supported by evidence that appellee Cenveo, Inc., had terminated Jacobs for unexplained absences after she had been reassigned to light-duty work: after working for one hour, she left and did not return. Thus, the court concluded that the commission did not abuse its discretion when it denied Jacobs's request for temporary-total-disability compensation on the basis that her discharge constituted a voluntary abandonment of her employment.

**{¶ 3}** We agree and we affirm the judgment of the court of appeals.

{¶ 4} On September 6, 2006, Jacobs injured her lower back while working for Cenveo, a self-insured employer. She was treated at the emergency room on September 7, 2006, and released. Jacobs's treating physician, Dr. Marinela L. Turc, said that she could return to light-duty work on October 2, 2006. On September 29, 2006, she filed a report of her injury with the Industrial Commission.

{¶ 5} Cenveo accommodated the light-duty work restriction by assigning Jacobs to an area where she could sit and stand as often as necessary. Jacobs reported to work on October 2, but after about an hour, she complained of pain and said that she could not continue. She left for the day, telling her employer that she intended to follow up with Dr. Turc. Cenveo later confirmed that Jacobs did not see Dr. Turc as she had said she would, and Jacobs never returned to work.

{¶ 6} Cenveo's human-resources manager sent Jacobs a letter on October 17, 2006, that stated:

> I recently sent you a certified letter on October 5, 2006, asking you to contact me to discuss your time away from work. According to Dr. Turc, you were able to return to work on restricted duty on October 2, 2006. You have failed to return to work or provide any updated information on your current condition.
>
> You are currently AWOL (absent without notification).
>
> If I do not hear from you by Monday, October 23, 2006, your employment with Cenveo will be terminated.

{¶ 7} On October 23, 2006, Cenveo discharged Jacobs for abandoning her job.

**{¶ 8}** The Industrial Commission allowed Jacobs's claim for "strain low back," which entitled her to receive compensation directly from Cenveo, the self-insuring employer, for loss sustained because of the specific injury allowed, including medical expenses. R.C. 4123.54(A). However, the commission noted that Jacobs initially had not requested compensation for lost time, and thus it found insufficient evidence to award temporary-total-disability compensation. On March 19, 2007, Jacobs filed a motion for temporary-total-disability compensation to begin December 30, 2006, supported by a report from a new physician, Dr. Rafik Massoun. The commission denied the request on the basis that Jacobs had been terminated from her employment on October 23, 2006, for violating the company's absenteeism policy and failing to accept the light-duty work offered. The commission concluded that Jacobs had abandoned her employment and that the abandonment barred payment of temporary-total-disability compensation.

**{¶ 9}** Three and a half years after the denial of benefits, on March 17, 2011, Jacobs filed a complaint for a writ of mandamus. She alleged that she was unable to return to her former position of employment due to her workplace injury, that she had not voluntarily abandoned her employment, and that the commission had abused its discretion when it denied her request for benefits.

**{¶ 10}** The court of appeals concluded that the commission did not abuse its discretion when it denied Jacobs's request for temporary-total-disability compensation, finding that her conduct had amounted to a voluntary abandonment of employment. The appellate court denied the writ.

**{¶ 11}** Jacobs has filed an appeal as of right.

**{¶ 12}** The purpose of temporary-total-disability compensation is to compensate an injured employee for the loss of earnings while the industrial injury heals. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 9.

> [I]n order to qualify for [temporary-total-disability] compensation, the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed.

*State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35.

{¶ 13} Jacobs contends that her physician had not released her to return to her former position of employment at the time of her discharge on October 23, 2006. Thus, she maintains that because she was medically unable to return to her former position, she remained eligible for temporary-total-disability compensation. Jacobs concedes that she returned to work on October 2, 2006, but claims that after an hour, she was physically unable to continue. Jacobs maintains that by reporting her inability to continue, she rejected the offer of a light-duty job. She claims that because no physician had released her to return to her former position of employment, Cenveo terminated her while she was disabled and cannot now argue that she voluntarily abandoned her employment.

{¶ 14} The court of appeals rejected this argument, relying on *State ex rel. Adkins v. Indus. Comm.*, 10th Dist. Franklin No. 07AP-975, 2008-Ohio-4260, a case in which the injured worker had accepted light-duty work but did not report when scheduled. Adkins was fired for violating her employer's attendance policy, and the commission denied her subsequent request for temporary-total-disability compensation on the grounds that her failure to report to work constituted voluntary abandonment of her job. The court of appeals held that

once Adkins accepted the light-duty position, she was required to adhere to her employer's absenteeism policy and that violating the policy was a voluntary abandonment of employment.

{¶ 15} In this case, the court of appeals concluded that Jacobs's conduct, like that of Adkins, amounted to a voluntary abandonment of employment. The court of appeals stated that Jacobs started at the light-duty position that Cenveo had offered her and that she never provided Cenveo with medical evidence that the position was beyond her capability, even though she had left after only an hour. The court of appeals reasoned that Jacobs cannot now argue that she rejected a job offer after she had reported for and begun to perform the work, failed to return to that job, and failed to provide any explanation for not returning.

{¶ 16} Jacobs argues that *Adkins* is factually distinguishable because in that case, the injured worker accepted the light-duty position but did not report to work on the scheduled date, while Jacobs left work because of pain from her workplace injury.

{¶ 17} We do not agree. Jacobs does not dispute that she began working in the position that Cenveo made available to accommodate her physical restrictions. Jacobs left after an hour but represented to Cenveo that she was going to consult with her physician. There is no evidence that she did. Instead, Jacobs simply did not return to work. When Cenveo notified her that she was considered absent without notification, she did not respond to the warning that she would be terminated if she did not return.

{¶ 18} When a claimant is discharged because of actions that were initiated by the claimant and that were not related to the industrial injury, a voluntary separation from employment has occurred that breaks the causal relationship between the industrial injury and the loss of earnings. *State ex rel. Brown v. Hoover Universal, Inc.*, 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 11. Under those circumstances, the claimant is considered to have

voluntarily departed from the workplace and is not entitled to temporary-total-disability compensation. *State ex rel. Daniels v. Indus. Comm.*, 99 Ohio St.3d 282, 2003-Ohio-3626, 791 N.E.2d 440, ¶ 7.

{¶ 19} The commission's order that Jacobs voluntarily abandoned her employment and was barred from receiving temporary-total-disability compensation was supported by the evidence. Thus, the commission did not abuse its discretion when it denied Jacobs's request for compensation.

{¶ 20} We affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

O'NEILL, J., dissents.

FRENCH, J., not participating.

_____

**O'NEILL, J., dissenting.**

{¶ 21} I question the application of the judicially created theory of voluntary abandonment of employment in any workers' compensation case, but it is particularly troubling in cases where the Industrial Commission has not even considered all the medical evidence presented by the claimant. In this case, there is unequivocal medical evidence that this employee was injured on the job. And the Industrial Commission has yet to address the merits of Wanda Jacobs's request for compensation based on the report from Dr. Rafik Massoun. I believe that any discussion of voluntary abandonment of employment is premature at best. This case should be remanded to the Industrial Commission for further proceedings.

{¶ 22} I continue to maintain my position that "voluntary abandonment of employment" is a judicial creation that is eroding Ohio's constitutionally guaranteed no-fault workers' compensation system. Decisions such as the

majority's in this case take the court further down the wrong path. *State ex rel. Robinson v. Indus. Comm.,* 138 Ohio St.3d 471, 2014-Ohio-546, 8 N.E.3d 833 (O'Neill, J., dissenting).

{¶ 23} Ohio's workers' compensation system is a no-fault system established 100 years ago by an amendment to the Ohio Constitution. *See* Article II, Section 35. It is codified in great detail in the Ohio Revised Code. The cornerstone of Ohio's system is that both sides surrender certain rights to gain certain protections. Injured workers relinquish their common-law access to the courts and their right to recover damages if they are injured on the job. In return, they gain the right to be compensated for medical bills and loss of earnings from a multibillion-dollar fund supplied by employers, who contribute a percentage of payroll in a predictable and fair process. Employers relinquish their common-law defenses and, in return, receive an iron-clad assurance that they cannot be sued for workplace injuries. It is a system of mutual compromise. *Blankenship v. Cincinnati Milacron Chems., Inc.,* 69 Ohio St.2d 608, 614, 433 N.E.2d 572 (1982).

{¶ 24} In *State ex rel. Ashcraft v. Indus. Comm.,* 34 Ohio St.3d 42, 517 N.E.2d 533 (1987), this court held that a claimant receiving temporary-total-disability compensation forfeits his right to continue receiving compensation when he becomes incarcerated, because he has voluntarily abandoned the workforce. This judicially created concept of voluntary abandonment was later expanded and applied to circumstances in which an injured worker is terminated following the injury. *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.,* 72 Ohio St.3d 401, 650 N.E.2d 469 (1995). In *Louisiana-Pacific,* this court held that an injured employee who is fired is barred from receiving temporary-total-disability compensation when the employer can show that the worker was terminated for violating a written work rule that (1) clearly defined the prohibited conduct, (2) had been previously identified by the employer as a dischargeable

offense, and (3) was known or should have been known to the employee. *Id.* at 403. I believe that this analysis is entirely irrelevant to a determination of a claimant's eligibility for lost wages as a result of a workplace injury.

{¶ 25} The case before us is a classic example of the consequences of creating an adversarial relationship where none should exist. The majority emphasizes the rationale that in voluntary-abandonment cases, the termination is unrelated to the worker's claimed injury. Majority opinion at ¶ 18, citing *State ex rel. Brown v. Hoover Universal, Inc.,* 132 Ohio St.3d 520, 2012-Ohio-3895, 974 N.E.2d 1198, ¶ 11, and *State ex rel. Daniels v. Indus. Comm.,* 99 Ohio St.3d 282, 2003-Ohio-3626, 791 N.E.2d 440, ¶ 7.

{¶ 26} But that clearly is not the case here. There was no break in the causal relationship between the industrial injury and the employee's inability to perform her job. Jacobs was injured on the job and tried to return to work on light duty. That did not work, and she has not been back since. Clearly, the termination is directly related to her inability to perform her job due to her injury. That issue is simply not subject to dispute based upon the record before us.

{¶ 27} If self-insured employers can avoid the payment of lost wages by terminating an employee subsequent to an injury, a cost-saving incentive is created: they do not have to pay anything—no lost wages, no payroll taxes. In short, the problem is gone with the employee. By design, this incentive undermines the workers' compensation system as a whole. It cannot be stated strongly enough that voluntary abandonment is wholly irrelevant to a determination of eligibility for temporary-total-disability compensation. The application of this defense in a case where all of the claimant's medical evidence has not been evaluated by the Industrial Commission is plain wrong. I dissent.

_____

Nager, Romaine & Schneiberg Co., L.P.A., Jennifer L. Lawther, Jerald A. Schneiberg, and Stacy M. Callen, for appellant.

Michael DeWine, Attorney General, and Colleen C. Erdman, Assistant Attorney General, for appellee Industrial Commission.

William W. Johnston, for appellee Cenveo, Inc.

_____