O’Neill, J.,
dissenting.
{¶ 28} I would grant the writ of mandamus. This case is another example of how the judicially created labyrinth of voluntary abandonment undermines Ohio’s constitutional and statutory system of workers’ compensation. See State ex rel. Jacobs v. Indus. Comm., 139 Ohio St.3d 86, 2014-ohio-1560, 9 N.E.3d 999 (O’Neill, J., dissenting); State ex rel. Robinson v. Indus. Comm., 138 Ohio St.3d 471, 2014-Ohio-546, 8 N.E.3d 883 (O’Neill, J., dissenting). There is simply no evidence that Brian Hildebrand quit his job at Wingate Transport prior to being injured at work on June 3, 2009, or prior to appearing at the workplace on June 9, 2009. But there is ample evidence that he was escorted off the premises by the police on June 9, 2009.
{¶ 29} Hildebrand was a truck mechanic with a history of lower-back problems for which his industrial-injury claims had been allowed. The majority of these claims, however, were medical only, and Hildebrand had successfully returned to work following all of his previous claims. In other words, by his actions he *540 demonstrated that he wanted to work. The staff hearing officer’s report and the statement of facts prepared for the commission-level hearing both acknowledge the fact that Hildebrand was working six days per week during the year prior to his injury that gave rise to this claim. On June 3, 2009, Hildebrand was injured on the job while replacing a grease seal on a truck. He told his employer, Wingate Transport, that he was injured on the day it happened. On June 9, 2009, Hildebrand went to work with a note from his doctor indicating that he should be on modified duty for the following ten days. Jeffrey Wingate responded by telling him to relinquish the keys to the Jeep that he had been driving. An argument ensued. When Hildebrand asked whether he was being fired, Wingate said no. However, the exchange ended with Hildebrand being escorted off the property by the police. It would be nonsensical to characterize that encounter as anything short of a termination.
{¶ 30} This court has determined that the need to investigate the nature of the injured worker’s separation from employment is eliminated when the injured worker was already disabled when the separation occurred. State ex rel. Pretty Prods., Inc. v. Indus. Comm., 77 Ohio St.3d 5, 7, 670 N.E.2d 466 (1996), citing State ex rel. Brown v. Indus. Comm., 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993). Surprisingly, and without any factual basis, this court has now departed from our own precedential case law.
{¶ 31} Hildebrand maintains that he was fired by Jeffrey Wingate on June 9, 2009. The employer, the Industrial Commission, and a majority of this court maintain that Hildebrand quit on June 9, 2009. The Industrial Commission appears to be relying on a finding made by a hearing officer of a wholly separate state agency, the Ohio Department of Job and Family Services, who determined that Hildebrand had quit for undisclosed personal reasons and was not eligible for unemployment-compensation benefits. When did the Industrial Commission of Ohio establish a practice of abdicating its fact-finding duties to a hearing officer who had considered only whether a person was eligible for unemployment-compensation benefits and whose decision was not yet final? The majority opinion denying Hildebrand’s eligibility for temporary-total-disability compensation-turns on the fact that Hildebrand failed to demonstrate that his loss of earnings was due to the injury he sustained on June 3, 2009. But regardless of whether Hildebrand quit or was fired on June 9, 2009, the fact is that Hildebrand’s workplace injury predated his separation from employment. That fact is undisputed. Thus, under Pretty Prods., an investigation into the nature of Hildebrand’s separation is not relevant to a determination of temporary total disability. The outcome here undermines the no-fault nature of our workers’ compensation system in Ohio.
*541 Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., Theodore A. Bowman, and Gretchen T.H. Esselstein, for appellant.
Michael DeWine, Attorney General, and Andrew J. Alatis, Assistant Attorney General, for appellee Industrial Commission.
Barno Law, L.L.C., John C. Barno, Melissa A. Black, and Jamison S. Speidel, for appellee Wingate Transport, Inc.
{¶ 32} Workers’ compensation in Ohio is the result of an agreement and compromise between employers and employees. The reality is that unintended injuries happen in the workplace. Injured workers need medical treatment and wages while they heal, not to mention a job to return to. Nobody is served when a business is forced to close because it cannot afford to pay to defend a lawsuit that arises when an employee is injured at work. Ohio’s system of workers’ compensation flows from Article II, Section 35 of the Ohio Constitution. In its simplest terms, employers agreed to pay premiums to the state insurance fund. Workers agreed not to sue when they became injured at work. It is the Ohio Constitution that authorizes Ohio’s workers’ compensation statutes and administrative rules.
{¶ 33} The agreement is simple but, as the ocean of ease law demonstrates, it is not easy. R.C. 4123.95 states that workers’ compensation statutes are to be liberally construed in favor of employees. This court has stated that the requirement for liberal construction means that coverage decisions should tilt in favor of awarding benefits. Fisher v. Mayfield, 49 Ohio St.3d 275, 278, 551 N.E.2d 1271 (1990). Workers’ compensation is heavily regulated by statute and administrative rule. Certainly courts, and this court in particular, are crucial components in the system to resolve questions regarding the application and interpretation of statutes and rules. However, the concept of voluntary abandonment is purely a judicial construct that should be applied sparingly, if ever. And I would hold as a matter of law that you are not quitting your job when you are summarily marched off the premises of your employer by a police officer. I dissent.