[Cite as *State ex rel. Manor Care, Inc. v. Indus. Comm.*, 2016-Ohio-5639.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Manor Care, Inc., | : | |
| Relator, | : | |
| v. | : | No. 15AP-698 |
| Industrial Commission of Ohio and Tonisha S. Parler, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on September 1, 2016

**On brief:** *Kegler, Brown, Hill + Ritter Co., LPA, Randall W. Mikes, David M. McCarty,* and *Katja Garvey,* for relator.

**On brief:** *Michael DeWine*, Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

**On brief:** *Agee, Clymer, Mitchell & Portman, Douglas P. Koppel, C. Russell Canestraro, Robert M. Robinson, Eric B. Cameron* and *Katherine E. Ivan,* for respondent Tonisha S. Parler.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Manor Care, Inc. ("Manor Care"), initiated this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of temporary total disability ("TTD") compensation to respondent Tonisha S. Parler, and ordering the commission to

find that Parler is not entitled to that compensation because she voluntarily abandoned her employment.

## I. Facts and Procedural Background

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued the appended decision, which includes findings of fact and conclusions of law. The magistrate concluded that the commission did not abuse its discretion in finding that Parler did not voluntarily abandon her employment with Manor Care and awarding her TTD compensation. Thus, the magistrate recommends this court deny Manor Care's request for a writ of mandamus.

## II. Objections

{¶ 3} Manor Care has filed objections to the magistrate's decision. Manor Care asserts that the magistrate erred in distinguishing this case from *State ex rel. Jacobs v. Indus. Comm.*, 139 Ohio St.3d 86, 2014-Ohio-1560, and in applying the holdings of *State ex rel. Omnisource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951 and *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499 to the facts of this case. Manor Care argues that *Jacobs* is legally indistinguishable from this case, and that *Omnisource* and *Reitter* are factually distinguishable which renders them inapplicable here. We find Manor Care's objections to be without merit.

## III. Discussion

### A. *Jacobs* is distinguishable

{¶ 4} We agree with the magistrate's finding that *Jacobs* is distinguishable from this case. In *Jacobs*, claimant Wanda Jacobs was injured in September 2006 while working for Cenveo, Inc. ("Cenveo"), a self-insured employer. *Jacobs* at ¶ 4. Jacobs' treating physician indicated that she could return to light-duty work on October 2, 2006, and Cenveo accommodated those restrictions. *Id.* at ¶ 4. Jacobs reported to work on that date but left early, complaining of pain. *Id.* at ¶ 5. She told Cenveo she intended to follow-up with her treating physician. *Id.* at ¶ 5. Two weeks later, Cenveo sent a letter to Jacobs to inquire as to her status because she had not reported back for work or contacted Cenveo. *Id.* at ¶ 6. The letter stated that her employment would be terminated if she did not contact Cenveo by October 23, 2006. *Id.* at ¶ 6. Because Jacobs did not contact Cenveo as requested, Cenveo terminated her employment, effective October 23, 2006. *Id.*

at ¶ 7.  In March 2007, Jacobs requested TTD compensation to begin December 30, 2006. *Id.* at ¶ 8.  The commission concluded that Jacobs had voluntarily abandoned her employment and that the abandonment barred payment of TTD compensation.  *Id.* Jacobs filed for a writ of mandamus.  *Id.* at ¶ 9.  This court and the Supreme Court of Ohio denied the writ on the basis that the commission's order, finding that Jacobs was barred from receiving TTD compensation because she voluntarily abandoned her employment, was supported by the evidence.  *Id.* at ¶ 19.

**{¶ 5}**  Here, the magistrate distinguished *Jacobs*, stating:  "Unlike Jacobs, who left work and did not see a doctor for months, claimant saw her doctor immediately.  Unlike Jacobs, whose doctor certified that she was temporarily unable to return to her former position of employment two months after the day she left, claimant's treating physician certified that she was unable to return to any work with restrictions on the very day she left work."  (Mag. Decision at ¶ 48.)  The magistrate reasoned that these factual differences render *Jacobs* inapplicable here.

**{¶ 6}**  Manor Care challenges the magistrate's reasoning as to *Jacobs*.  Manor Care asserts that the magistrate erred in finding that Parler's "treating physician" certified her as unable to return to any work.  Manor Care argues that Daniel Wills, D.C., who certified that Parler was unable to return to work beginning March 31, 2014, was not her treating physician on that date.  This argument is unpersuasive because Parler presented to Dr. Wills on that date for treatment, and she also signed a form on that date requesting the Ohio Bureau of Workers' Compensation change her physician of record to Dr. Wills. *State ex rel. Findlay Industries v. Indus. Comm.*, 10th Dist. No. 04AP-256, 2004-Ohio-6833, ¶ 17 ("[i]t is reasonable to expect that a 'physician of record' is also a 'treating physician' ").

**{¶ 7}**  Manor Care also argues that the magistrate erroneously determined that Dr. Wills certified that Parler "was unable to return to any work with restrictions on the very day she left work."  However, on March 31, 2014, Dr. Wills certified that Parler would be unable to return to work until April 18, 2014.  Then on May 13, 2014, Dr. Wills certified that Parler was temporarily unable to return to work from March 31 to August 31, 2014. Thus, contrary to Manor Care's argument, Dr. Wills certified that Parler was unable to return to any work beginning March 31, 2014.

{¶ 8}   Manor Care further argues that Parler's failure to provide any update regarding her status led to her voluntary separation from employment. Thus, Manor Care reasons that, like in *Jacobs*, Parler's conduct broke the causal relationship between the industrial injury and the loss of earnings, barring her from TTD compensation. As the magistrate correctly determined, however, Manor Care's application of the *Jacobs* case to this case does not account for the timing of the employment termination relative to the evidence of Parler's total disability. Parler submitted evidence to the commission demonstrating that, prior to her conduct leading Manor Care to terminate her employment, she was unable to return to any work. In *Jacobs*, there was no evidence that the claimant was unable to return to any work prior to her discharge. In fact, Jacobs requested TTD compensation to begin more than one month after her employment was terminated. Therefore, we reject Manor Care's argument that the magistrate erroneously distinguished *Jacobs* from this case.

### B. *Omnisource* and *Reitter Stucco* are applicable

{¶ 9}   We also reject Manor Care's assertion that *Omnisource* and *Reitter Stucco* are inapplicable to the facts of this case. According to Manor Care, those two cases are distinguishable from this case because Parler was not already receiving TTD compensation at the time Manor Care terminated her employment. In support, Manor Care cites the following statement in *State ex rel. Hildebrand v. Wingate Transp., Inc.*, 141 Ohio St.3d 533, 2015-Ohio-167, ¶ 23:

> Furthermore, *Pretty Products* [*v. Indus. Comm.*, 77 Ohio St.3d 5, 1996-Ohio-132] does not apply here. In *Pretty Prods.* and similar cases that followed, each injured worker was already receiving temporary-total-disability compensation when terminated from employment and had therefore already demonstrated that he or she was disabled as a result of an industrial injury (which was the cause of a loss of earnings).

Manor Care reasons that, because Parler was not receiving TTD compensation when she abandoned her employment, the principle that a claimant cannot abandon her employment while disabled does not apply. We disagree.

{¶ 10} Manor Care's reasoning assumes that the analysis in this case turns on whether Parler was receiving TTD compensation when Manor Care terminated her

employment. While the above-quoted statement from *Hildebrand* suggests that receipt of TTD compensation, and not just eligibility for TTD compensation, prior to termination is a critical fact, viewing that statement within the context of that case and other case law negates that suggestion. In *Hildebrand*, the claimant quit his job due to a disagreement with his employer on the same day that he reported to work with a note from his doctor restricting him to modified duty. *Hildebrand* at ¶ 1. Because his departure from work was not causally related to his injury, he was not entitled to TTD compensation. *Id.* at ¶ 22.

{¶ 11} Whether a claimant was receiving TTD compensation at the time of the separation is not the dispositive issue; rather, the issue is whether the claimant was totally disabled when the discharge occurred. In *Omnisource*, *Reitter Stucco*, and *Pretty Prods.*, the Supreme Court set forth the principle that "a claimant remains eligible for TTD compensation if the claimant is still disabled at the time of the claimant's departure from his employer, regardless of whether the departure is voluntary or involuntary." *State ex rel. Corman v. Allied Holdings, Inc.*, 10th Dist. No. 10AP-38, 2010-Ohio-5153, ¶ 9. Thus, even if an employment termination is considered voluntary, "eligibility for temporary total disability compensation remains if the claimant was still disabled at the time the discharge occurred." *Reitter Stucco* at ¶ 10; *see Omnisource* at ¶ 10 ("[a] claimant who is already disabled when terminated is not disqualified from temporary total disability compensation").

{¶ 12} Here, Parler submitted evidence that she was totally disabled beginning March 31, 2014, weeks before she was terminated for failing to communicate with Manor Care regarding her status. Thus, as the magistrate determined, evidence in the record supported the commission's determination that Parler's absence from the workforce was due to her work-related injury, not her failure to communicate with Manor Care regarding her absence. Accordingly, we find the magistrate properly applied *Omnisource* and *Reitter Stucco* to the facts of this case.

## IV. Disposition

{¶ 13} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate correctly determined Manor Care is not entitled to the requested writ of mandamus. The magistrate properly applied the pertinent law to the salient facts.

Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. We, therefore, overrule Manor Care's objections to the magistrate's decision and deny its request for a writ of mandamus.

*Objections overruled;*
*writ of mandamus denied.*

DORRIAN, P.J., and BROWN, J., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Manor Care, Inc., | : | |
| Relator, | : | |
| v. | : | No. 15AP-698 |
| Industrial Commission of Ohio and Tonisha S. Parler, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on April 26, 2016

*Kegler, Brown, Hill + Ritter Co., LPA, Randall W. Mikes, David M. McCarty,* and *Katja Garvey,* for relator.

*Michael DeWine*, Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

*Agee, Clymer, Mitchell & Portman, Douglas P. Koppel, C. Russell Canestraro, Robert M. Robinson, Eric B. Cameron* and *Katherine E. Ivan,* for respondent Tonisha S. Parler.

IN MANDAMUS

{¶ 14} Relator, Manor Care, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of temporary total disability ("TTD") compensation awarded to respondent Tonisha S. Parler ("claimant"), and ordering the commission to

find that claimant is not entitled to that compensation because she voluntarily abandoned her employment.

Findings of Fact:

{¶ 15} 1. Claimant sustained a work-related injury on March 3, 2014, and her workers' compensation claim was originally allowed for "lumbosacral joint sprain/strain."

{¶ 16} 2. Claimant was released to return to work with restrictions as of March 13, 2014.

{¶ 17} 3. On March 27, 2014, claimant was seen at the emergency room complaining of persistent low back pain. Claimant was given a prescription for Percocet, instructed that she could use Robaxin as a muscle relaxant, and that she was off work "until cleared by occupational health or physical therapy."

{¶ 18} 4. Claimant was seen at Work Health the next day, March 28, 2014. Claimant was released to return to restricted work, no lifting over five pounds, and no driving while on pain medication. It was further indicated that an MRI had been ordered.

{¶ 19} 5. Apparently, claimant returned to work on March 31, 2014; however, she forgot to bring her work restrictions with her. As such, claimant was sent home after verbally agreeing that she would return to work the next day with her restrictions.

{¶ 20} 6. That same day, March 31, 2014, claimant saw Daniel E. Wills, D.C., and he certified that she was unable to return to work before April 18, 2014.

{¶ 21} 7. It is undisputed that claimant did not return to work.

{¶ 22} 8. In a letter dated April 11, 2014, Ada Farley, the human resources director for relator, wrote to claimant asking her to complete certain paperwork necessary to apply for a leave of absence. Specifically, that letter provides:

> We have made repeated attempts to get a hold of you since 4/1/2014, but have been unsuccessful in reaching you. When you arrived to work on 3/31/2014, you agree[d] to leave because we did not have updated restrictions from your physician. The last records we had were from your visit to Mt. Carmel East Emergency room on 3/27/2014. During your visit there, Dr. Kenyon recommended "no work until cleared by occ. Health or physical therapy." You had a follow

up appointment on 3/28/2014 with Work Health the following day. Those were the restrictions I needed in your file in order for you to return to work. You stated to me in person on 3/31/2014 that you had forgot them at home, but you would bring them in on Tuesday, 4/1/2014, when you returned to work. We had an agreement that you would work Tuesday—Friday that week instead of Monday—Thursday. On 4/1/2014 you did not show up to work, nor did you contact us to tell us you weren't coming in. Due to this we are offering you a personal LOA. Enclosed you will find the paperwork necessary to apply for a personal LOA. Your physician is required to fill out Section C, as your time off is related to a serious health condition that makes you unable to perform the essential functions of your job. Please return the completed forms to HR by 5/2/2014. If we do not receive your completed paperwork by May 2nd 2014 we will assume you have resigned your position and will move forward with the termination process at that time.

{¶ 23} 9. An MRI taken April 22, 2014 showed that claimant had a disc herniation at L4-5. This condition would later be allowed in her workers' compensation claim.

{¶ 24} 10. A fax dated May 2, 2014 from Ms. Farley indicated claimant had been terminated that day because she had failed to provide leave of absence paperwork by the deadline imposed: May 2, 2014.

{¶ 25} 11. On June 2, 2014, claimant filed a C-86 motion requesting TTD compensation beginning March 31, 2014. Claimant attached a Medco-14 signed by Dr. Wills and dated May 13, 2014 certifying that she was temporarily unable to return to work from March 31 to August 31, 2014.

{¶ 26} 12. An independent medical evaluation was performed by David K. Halley, M.D. In his July 18, 2014 report, Dr. Halley identified the then allowed condition of lumbosacral joint sprain/strain, discussed the history and treatment related to the injury, and provided his physical findings on examination. Dr. Halley opined that no further treatment was necessary for the allowed condition and that claimant had reached maximum medical improvement ("MMI").

{¶ 27} 13. Claimant's request for TTD compensation was heard before a district hearing officer ("DHO") on September 10, 2014. The DHO denied the request based on a finding that claimant had voluntarily abandoned her employment with relator.

{¶ 28} 14. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on October 21, 2014. The SHO vacated the prior DHO order and awarded claimant TTD compensation as follows:

> Temporary total disability compensation is granted from 03/31/2014 through 07/17/2014. Disability is based on the 03/31/2014 slip and the 05/13/2014 Medco-14 Physician's Report of Work Ability from Daniel Wills, D.C. and the 04/01/2014, 05/22/2014, and 07/02/2014 treatment records from Chiropractic Care Inc.
>
> The allowed condition is found to have reached maximum medical improvement as of 07/18/2014 based on the 07/18/2014 report from David Halley, M.D., and based on this temporary total disability compensation based on the currently allowed conditions is denied from 07/18/2014 through 10/20/2014.

{¶ 29} Thereafter, the SHO addressed relator's voluntary abandonment argument and rejected it, stating:

> The Employer's argument of a voluntary abandonment is not found persuasive. The 04/11/2014 letter from Ada Farley documents that the Injured Worker meet [sic] with the Employer on 03/31/2014 and indicates the issue that led to termination was her failure to bring in medical evidence of restrictions as of 04/01/2014 and later. The 05/02/2014 fax from Ada Farley shows that the termination did not occur until 05/02/2014. The 03/31/2014 slip and 05/13/2014 Medco-14 form from Daniel Wills, D.C., both indicate that he removed the Injured Worker from all work as of 03/31/2014 and certified such through 08/30/2014. Since the Injured Worker was removed from all work and was no longer on light duty restrictions as of 03/31/2014, 04/01/2014, and 05/02/2014, the holdings in OmniSource Corp. v. Industrial Commission (2007), 113 O.S.3d 103 and Reitter Stucco, Inc. v. Industrial Commission, Slip Opinion No. 2008-Ohio-499, that a person cannot voluntarily abandon a job if they are totally disabled, are found to apply and no voluntary abandonment is found.

> Because the case of <u>Jacobs v. Industrial Commission</u> (2101) [sic], 139 O.S.3d 86, involved a situation where the Injured Worker was not removed from all work but was released to work with restrictions, and in the present case the Injured Worker was removed from all work, <u>Jacobs</u> is not found to apply.

{¶ 30} 15. Relator's appeal was refused by order of the commission mailed November 15, 2014.

{¶ 31} 16. Relator filed a request for reconsideration which was heard before the commission on February 3, 2015. Ultimately, the commission denied relator's request for reconsideration and stated that the SHO order remained in full force and effect.

{¶ 32} 17. Following a hearing before a DHO on February 6, 2015, claimant's claim was additionally allowed for disc herniation at L4-5.

{¶ 33} 18. Relator's appeal was heard before an SHO on March 23, 2015. The SHO affirmed the prior DHO order and claimant's claim has been allowed for disc herniation at L4-5.

{¶ 34} 19. Claimant filed a request for TTD compensation.

{¶ 35} 20. Ultimately, claimant's request for TTD compensation was granted based on the newly allowed condition of disc herniation at L4-5 beginning July 19, 2014 and continuing.

{¶ 36} 21. Relator's subsequent appeal was refused by order of the commission mailed May 7, 2015.

{¶ 37} 22. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 38} Relator argues that the commission abused its discretion by awarding TTD compensation to claimant and the commission should have found that claimant voluntarily abandoned her employment with relator and was, as such, not eligible for TTD compensation. For the reasons that follow, the magistrate finds that the commission did not abuse its discretion here.

{¶ 39} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform

the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.  *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief.  *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).  A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).  Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 41} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.  Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI.  *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 42} Relator argues that the present case is controlled by the Supreme Court of Ohio's decision in *State ex rel. Jacobs v. Indus. Comm.,* 139 Ohio St.3d 86, 2014-Ohio-1560.  Wanda Jacobs sustained a work-related injury on September 6, 2006 while working for Cenveo, a self-insured employer.  Jacobs was treated at the emergency room on September 7, 2006, at which time she was released to return to light-duty work as of October 2, 2006.

{¶ 43} Cenveo accommodated the light-duty work restrictions when Jacobs returned to work on October 2, 2006; however, Jacobs complained of pain and, after

about one hour, indicated that she could not continue. Jacobs told Cenveo that she intended to follow-up with her doctor.

{¶ 44} On October 17, 2006, Cenveo's human resources manager sent Jacobs a letter indicating that if they did not hear from her by October 23, 2006, her employment would be terminated. Jacobs did not contact Cenveo and was discharged effective October 23, 2006.

{¶ 45} On March 19, 2007, Jacobs filed a motion for TTD compensation beginning December 30, 2006. The commission denied her request for TTD compensation on the basis that she had been terminated from her employment on October 23, 2006 for violating the company's absenteeism policy and failing to accept the light-duty work offered. The commission concluded that Jacobs had abandoned her employment and that abandonment barred the payment of TTD compensation.

{¶ 46} Jacobs filed a mandamus complaint. This court and the Supreme Court both denied Jacobs' request for a writ of mandamus specifically noting that, when Jacobs left, she failed to present Cenveo with any medical evidence that the position was beyond her capability. Further, it was specifically noted that Jacobs left after one hour and indicated she was going to consult with her physician. There was no evidence that she did so. Instead, Jacobs simply did not return to work, and then requested TTD compensation beginning December 30, 2006, two months after she was terminated.

{¶ 47} In the present case, claimant was released to return to work with restrictions on March 31, 2014. When she reported to work that day, she did not bring her new restrictions with her, but promised to bring them the next day. That same day, March 31, 2014, claimant saw her doctor and was taken off work until April 18, 2014. Thereafter, claimant had an MRI which showed that her condition had indeed worsened.

{¶ 48} Unlike Jacobs, who left work and did not see a doctor for months, claimant saw her doctor immediately. Unlike Jacobs, whose doctor certified that she was temporarily unable to return to her former position of employment two months after the day she left, claimant's treating physician certified that she was unable to return to any work with restrictions on the very day she left work. The two cases are not similar factually and the reasoning from *Jacobs* does not apply here. Where as here, there is

some evidence in the record upon which the commission relied indicating that claimant was unable to return to work at the time she allegedly abandoned her employment. The commission is permitted to find that her absence from the workplace was, in fact, due to the work-related injury. Consistent with the decisions in *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, and *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, a person cannot voluntarily abandon a job if they are totally disabled at the time of the alleged abandonment.

{¶ 49} Finding that there is some evidence in the record on which the commission could rely to find that claimant's departure from the workforce was related to her work-related injury, it is the magistrate's decision that the commission did not abuse its discretion in finding that she did not voluntarily abandon her employment with relator and awarding her TTD compensation. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).