[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Floyd v. Formica Corp.*, Slip Opinion No. 2014-Ohio-3614.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-3614

THE STATE EX REL. FLOYD, APPELLANT, *v*. FORMICA CORPORATION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Floyd v. Formica Corp.*, Slip Opinion No. 2014-Ohio-3614.]

*Workers' compensation—Temporary-total-disability compensation—Voluntary abandonment of the work force—Court of appeals' judgment denying a writ of mandamus affirmed.*

(No. 2013-0042—Submitted May 13, 2014—Decided August 27, 2014.)

APPEAL from the Court of Appeals for Franklin County, No. 11AP-928, 2012-Ohio-5769.

_____

**Per Curiam**.

{¶ 1}  The claimant-appellant, Darwin Floyd, applied for temporary-total-disability compensation in 2010, almost ten years after he had left his employment with appellee Formica Corporation.  Appellee Industrial Commission determined that Floyd was no longer eligible to receive temporary-

total-disability compensation because he had abandoned the entire job market when he left Formica and retired. The commission denied his application.

{¶ 2} Floyd sought relief in mandamus in the Tenth District Court of Appeals. The court of appeals concluded that the commission had not abused its discretion, because the evidence supported its decision that Floyd had voluntarily abandoned the workforce in 2001 after his employment with Formica ended. The court denied Floyd's request for an extraordinary writ.

{¶ 3} We agree and affirm the judgment of the court of appeals.

*Facts*

{¶ 4} On March 11, 2000, Darwin Floyd was injured while working for the Formica Corporation, a self-insured employer. A worker's compensation claim was allowed for various shoulder conditions. Following surgery on his left shoulder, he returned to light-duty work in September 2000, until his light-duty assignment ended on January 21, 2001. At that time, Formica no longer had any position to accommodate Floyd's medical restrictions, so he began receiving temporary-total-disability compensation. Shortly afterward, Floyd, at age 63, applied for and began receiving Social Security retirement benefits, effective April 2001.

{¶ 5} Floyd's temporary-total-disability compensation continued until June 21, 2006, when the commission determined that his condition had reached maximum medical improvement and terminated his compensation.[1] A year later, he applied for permanent-total-disability benefits but withdrew his application. Following additional surgery on July 18, 2008, Floyd began receiving temporary-

---

[1] "Maximum medical improvement" is defined as "a treatment plateau * * * at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." Ohio Adm.Code 4121-3-32(A)(1). Temporary-total-disability compensation terminates when a claimant reaches maximum medical improvement. R.C. 4123.56.

total-disability compensation until the commission concluded that his condition had again reached maximum medical improvement on May 26, 2009.

{¶ 6} Floyd's current request for temporary-total-disability compensation followed surgery on November 26, 2010. A staff hearing officer denied his request, finding that Floyd was ineligible because he was not in the workforce as of November 26, 2010. The order stated:

> The Staff Hearing Officer notes that in 2001, the Injured Worker was working for the Employer on a light duty basis when the Self-Insuring Employer informed the Injured Worker they no longer had light duty work available for him. The Staff Hearing Officer finds that the Injured Worker was placed on temporary total disability and later was found to have reached maximum medical improvement for the recognized conditions in the claim. The Injured Worker testified that he had not worked anywhere since he had stopped working in 2001 when there was no light duty work available. He applied for and began receiving social security retirement benefits in May, 2001. Although the Injured Worker testified at the hearing he would have kept working for the Employer if light duty work had remained available, he acknowledged he did not attempt to return to work anywhere else after 2001.

{¶ 7} The hearing officer found that there was no evidence that Floyd had tried to find any employment since 2001. According to the hearing officer, who cited *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, Floyd's failure to look for any other employment was

evidence that he did not intend to reenter the workforce after leaving Formica, thus making him ineligible for further compensation. The commission agreed.

{¶ 8} Floyd filed a complaint for a writ of mandamus. A magistrate determined that it was "insufficient for the commission to find that [Floyd] has not worked or searched for work since 2001 without reliance upon medical evidence that relator was medically capable of employment." 2012-Ohio-5769, ¶ 85. The magistrate recommended that the court issue a writ ordering the commission to appropriately determine Floyd's eligibility for temporary-total-disability compensation.

{¶ 9} In a split decision, the court of appeals sustained objections to the magistrate's decision filed by the commission and Formica. The appellate court concluded that in light of the claimant's having received Social Security retirement benefits in 2001, the commission had properly addressed the issue of voluntary abandonment. The court further concluded that the evidence supported the commission's decision that Floyd intended to voluntarily abandon the workforce in 2001 when his employment with Formica ended. The court denied the writ.

{¶ 10} The dissenting judge agreed with the magistrate that the case should be returned to the commission to determine whether Floyd was medically capable of working after his light-duty position ended.

{¶ 11} Floyd's appeal is before this court as of right.

*Legal Analysis*

{¶ 12} To be entitled to extraordinary relief in mandamus, Floyd must establish that he has a clear legal right to the relief requested and that the commission has a clear legal duty to provide it. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198, 498 N.E.2d 464 (1986). To do so, Floyd must demonstrate that the commission abused its discretion by entering an order not supported by the evidence in the record. *State ex rel. Avalon Precision*

*Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, 846 N.E.2d 1245, ¶ 9. Thus, the issue before the court is whether the commission's order denying temporary-total-disability compensation was supported by evidence in the record that Floyd had voluntarily abandoned the entire job market and was no longer eligible for compensation when he applied in 2010.

A.   Temporary Total Disability

{¶ 13} R.C. 4123.56 provides for compensation for temporary total disability when an industrial injury prevents a claimant from performing the duties of his position of employment. *State ex rel. Baker v. Indus. Comm.*, 89 Ohio St.3d 376, 380, 732 N.E.2d 355 (2000). The purpose is to compensate the injured worker for lost earnings during a period of disability while an injury heals. *State ex rel. Hoffman v. Rexam Beverage Can Co.*, 137 Ohio St.3d 129, 2013-Ohio-4538, 998 N.E.2d 442, ¶ 14.

B.   Effect of Abandonment of Employment on Eligibility

{¶ 14} An injured worker's eligibility for temporary-total-disability compensation depends not only on whether the claimant is unable to perform the duties of the position of employment, but also on whether the claimant continues to be a part of the active workforce. *Baker* at 380. Because temporary-total-disability compensation is intended to compensate an injured worker for the loss of earnings while the industrial injury heals, a claimant who is no longer part of the workforce can have no lost earnings. *Pierron*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 9; *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 43-44, 517 N.E.2d 533 (1987).

{¶ 15} A claimant who voluntarily retires for reasons unrelated to the industrial injury may no longer be eligible for temporary-total-disability compensation to which he otherwise might be entitled if, by retiring, he has voluntarily removed himself permanently from the workforce. *Baker* at 383. Moreover, if the departure is related to the industrial injury, "it is not necessary

for the claimant to first obtain other employment, but it is necessary that the claimant has not foreclosed that possibility by abandoning the entire workforce" in order to remain eligible for temporary-total-disability compensation. *State ex rel. Lackey v. Indus. Comm.*, 129 Ohio St.3d 119, 2011-Ohio-3089, 950 N.E.2d 542, ¶ 11; *Baker* at 383-384.

{¶ 16} Thus, the critical issue for postretirement eligibility for temporary-total-disability compensation is whether the injured worker permanently abandoned the entire job market after retirement. This is a factual question for the commission that depends primarily on what the claimant intended. *State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381, 383, 544 N.E.2d 677 (1989). The commission may infer a claimant's intent " ' "from words spoken, acts done, and other objective facts." ' " *Id.*, quoting *State v. Freeman*, 64 Ohio St.2d 291, 297, 414 N.E.2d 1044 (1980), quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973). The commission must consider all relevant circumstances existing at the time of the alleged abandonment, including evidence of the claimant's intention to abandon the work place as well as acts by which the intention is put into effect. *Id*.

C.    Inaction or Failure to Seek Employment as Evidence of Abandonment

{¶ 17} A claimant's failure to search for other employment following retirement may be evidence that he or she has permanently abandoned the entire workforce. *Pierron*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 10. In *Pierron*, the claimant was working in a light-duty position when his employer gave him the option to retire or be laid off. Pierron retired and, other than a brief part-time job, never worked again. Six years after he retired, Pierron filed for temporary-total-disability compensation. The commission concluded that he was no longer eligible because he had voluntarily abandoned his employment. This court upheld the commission's decision. The court reasoned that Pierron's failure to search for employment in the years that followed his retirement was evidence

6

that he had intended to leave the entire workforce; thus, he could not allege that any lack of income was due to his industrial injury. *Id*., ¶ 10-11.

{¶ 18} In *Lackey*, 129 Ohio St.3d 119, 2011-Ohio-3089, 950 N.E.2d 542, this court agreed with the commission that the claimant's failure to look for work in the 17 months after he retired from his former position was evidence that he had retired from the entire labor market. *Id*., ¶ 12. The court reasoned that when Lackey filed for retirement, there was no evidence that he was medically unable to work, *id*, ¶ 13; thus, he would have been eligible for postretirement temporary-total-disability compensation only if he were gainfully employed elsewhere and unable to perform the duties of that job because of his industrial injury, *id*., ¶ 15.

{¶ 19} Likewise, in *State ex rel. Corman v. Allied Holdings, Inc*., 132 Ohio St.3d 202, 2012-Ohio-2579, 970 N.E.2d 929, the claimant voluntarily retired from employment while he was receiving temporary-total-disability compensation for a 2002 industrial injury. When his condition reached maximum medical improvement (and compensation was terminated by law), he did not obtain other work. In 2009, Corman applied to have temporary-total-disability compensation reinstated, but the commission denied his request on the basis that he had voluntarily retired and never again looked for work. This court agreed, reasoning that like Pierron, Corman chose to not work; consequently, he could not allege a loss of wages as the result of his industrial injury. *Id*., ¶ 7.

{¶ 20} The commission's findings in the case before us are consistent with those in *Pierron*, *Lackey*, and *Corman*. Like Corman, Floyd was receiving temporary-total-disability compensation when he began receiving retirement benefits. Both Corman and Floyd eventually reached maximum medical improvement. Neither produced evidence that he was medically unable to perform other work and neither made any effort to find other employment. The commission, consistent with *Pierron*, found that neither one remained eligible for

temporary-total-disability compensation, because they had permanently abandoned the workforce.

D.    The Commission's Order was Supported by the Evidence

{¶ 21} Floyd contends that he was not required to look for work while he was receiving temporary-total-disability compensation and that during those periods he was not receiving compensation, he was not medically able to work. The numerous surgeries he underwent after leaving Formica in 2001, he argues, prevented him from performing any gainful employment.

{¶ 22} There is no requirement under R.C. 4123.56 that a claimant must search for alternative employment during periods of temporary total disability, and the commission's order did not impose such a duty on Floyd. Nevertheless, even for those periods after the commission found that his condition had reached maximum medical improvement in 2006 and in 2009, there was no evidence that Floyd intended to reenter the workforce.[2] Floyd even applied for permanent total disability in 2007, but later withdrew his application.[3]

{¶ 23} Instead, the evidence demonstrates that when Floyd left Formica he was medically capable of light-duty work. Floyd had been performing light-duty work at Formica until the position was no longer available. He began receiving temporary-total-disability compensation because he could not return to his former position at Formica and Formica had no light-duty position available.

---

[2] The commission twice determined that Floyd's condition reached maximum medical improvement—in 2006 and 2009. A third-party administrator for Formica had agreed to pay temporary-total-disability compensation in 2008 following an additional surgery. It does not appear from the record that the issue of voluntary abandonment was raised at that time. Each application is considered separately, and the claimant is required to establish temporary total disability at the time of each application. *See State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 689 N.E.2d 30.

[3] "Permanent total disability" is the inability to perform sustained remunerative employment as a result of the allowed conditions in the claim. Ohio Adm.Code 4121-3-34(B)(1).

But there was no medical evidence at that time that he was no longer capable of doing light-duty work.

{¶ 24} The evidence further demonstrated that he applied for and began receiving retirement benefits. Within months of leaving Formica, Floyd applied for Social Security retirement benefits, although he was receiving temporary-total-disability compensation at the time. He was not required to apply for Social Security benefits; rather, this was a personal choice. Had Floyd intended to return to the workforce after leaving Formica, he had no reason to file for retirement benefits at that time.

{¶ 25} The evidence also demonstrates that he chose not to seek other work when his temporary-total-disability compensation terminated. After he began receiving retirement benefits in 2001, Floyd did not look for other employment before applying for temporary-total-disability compensation in 2010. When he reached maximum medical improvement and his temporary-total-disability compensation was statutorily terminated, Floyd had a choice to either search for other work or to no longer work. He admitted that he did not attempt to work anywhere else.

{¶ 26} Thus, the court of appeals properly determined that the commission's order was supported by evidence in the record that Floyd had already abandoned the entire workforce when he applied for temporary-total-disability compensation in 2010.

{¶ 27} Consequently, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Casper & Casper and Douglas W. Casper, for appellant.

Michael DeWine, Attorney General, and Latawnda N. Moore, Assistant Attorney General, for appellee Industrial Commission.

Dinsmore & Shohl, L.L.P., and Joan M. Verchot, for appellee Formica Corporation.

————————————