[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Walmart, Inc. v. Hixson*, Slip Opinion No. 2022-Ohio-4187.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4187

THE STATE EX REL. WALMART, INC., APPELLEE, *v.* HIXSON ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Walmart, Inc. v. Hixson*, Slip Opinion No. 2022-Ohio-4187.]

*Workers' compensation—Our decision in* State ex rel. Klein v. Precision Excavating & Grading Co. *applies prospectively only.*

(No. 2021-1479—Submitted August 2, 2022—Decided November 30, 2022.)

APPEAL from the Court of Appeals for Franklin County, No. 19AP-323, 2021-Ohio-3802.

_____

**Per Curiam.**

{¶ 1} Appellant Industrial Commission of Ohio awarded appellant Dianna Hixson temporary-total-disability ("TTD") compensation in 2018, before we issued our decision in *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386.  After we released *Klein*, Hixson's

former employer, appellee, Walmart, Inc., asked the Tenth District Court of Appeals for a writ of mandamus ordering the commission to reverse its decision on the basis of *Klein*. The Tenth District granted the writ, and the commission and Hixson appealed.

{¶ 2} This case presents the question whether our decision in *Klein* applies retroactively or prospectively only. Analyzing the three factors set forth in *DiCenzo v. A-Best Prods. Co., Inc.*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, paragraph two of the syllabus, we conclude that *Klein* applies prospectively only. We therefore reverse the Tenth District's judgment and deny the writ.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Hixson sustained injuries when she fell while working for Walmart on August 2, 2017. Her workers' compensation claim was allowed for various shoulder and wrist conditions. Hixson sought TTD compensation from September 11, 2017, through February 12, 2018, and continuing.

{¶ 4} A district hearing officer ("DHO") denied the request, and Hixson appealed. A staff hearing officer ("SHO") vacated the DHO's order and awarded TTD compensation from September 11, 2017, through March 6, 2018, the date Hixson notified Walmart of her retirement. The SHO found that Hixson's retirement was age-related and therefore constituted a voluntary abandonment of her employment. Both Walmart and Hixson appealed the SHO's order.

{¶ 5} The commission vacated the SHO's order, denied Walmart's appeal, granted Hixson's appeal, and awarded TTD compensation from September 11, 2017, through May 12, 2018, and continuing. Relying on *State ex rel. Pretty Prods., Inc. v. Indus. Comm.*, 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), the commission concluded that Hixson did not voluntarily abandon her employment on March 6, 2018, because she was temporarily and totally disabled from her position when she left her employment at Walmart.

**{¶ 6}** The commission mailed its order on July 3, 2018. On September 27, 2018, we issued our decision in *Klein*, which overruled the portion of *Pretty Prods.* that the commission had relied on. *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 30.

**{¶ 7}** On May 14, 2019, Walmart filed this mandamus action in the Tenth District, seeking a writ ordering the termination of Hixson's TTD compensation after March 6, 2018. A magistrate recommended granting the writ, concluding that under *Klein*, the commission had abused its discretion by awarding TTD compensation for the period following Hixson's retirement. 2021-Ohio-3802, 180 N.E.3d 1197, ¶ 2, 7. The Tenth District adopted the magistrate's recommendation and granted the writ. *Id*. at ¶ 26. The commission and Hixson appealed.

## II. ANALYSIS

**{¶ 8}** The commission and Hixson ask us to reverse the Tenth District's judgment and hold that *Klein* applies prospectively only or, in the alternative, to vacate the Tenth District's judgment and grant a limited writ ordering the commission to evaluate the facts of this case under *Klein* in the first instance.

### A. *Legal Standards*

**{¶ 9}** In a direct appeal of a mandamus action originating in the court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164, 228 N.E.2d 631 (1967). Walmart is entitled to a writ of mandamus if it shows by clear and convincing evidence that it has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, 184 N.E.3d 81, ¶ 10. When an order of the commission "is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order."

*State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, 68 N.E.3d 757, ¶ 18.

### B. *Retrospective or Prospective Application of* **Klein**

{¶ 10} We must determine whether *Klein* applies to Hixson's TTD-compensation claim, that is, whether *Klein* applies retrospectively or whether it applies prospectively only. For the reasons below, we hold that *Klein* applies prospectively only.

#### 1. The Peerless *exception*

{¶ 11} The general rule is that a decision of this court overruling a prior decision "is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 210, 129 N.E.2d 467 (1955). "The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." *Id*. The exception does not apply here, because an award of TTD compensation is not a vested right.

{¶ 12} "A 'vested right' can 'be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right.' " *State ex rel. Jordan v. Indus. Comm.*, 120 Ohio St.3d 412, 2008-Ohio-6137, 900 N.E.2d 150, ¶ 9, quoting *Washington Cty. Taxpayers Assn. v. Peppel*, 78 Ohio App.3d 146, 155, 604 N.E.2d 181 (4th Dist.1992). "[A] right is 'vested' when it 'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.' " *Harden v. Ohio Atty. Gen.*, 101 Ohio St.3d 137, 2004-Ohio-382, 802 N.E.2d 1112, ¶ 9, quoting *Black's Law Dictionary* 1324 (7th Ed.1999). To be vested, a right must constitute "more than a 'mere expectation or interest based upon an anticipated continuance of existing laws.' " *Jordan* at ¶ 9, quoting *In re Emery*, 59 Ohio App.2d 7, 11, 391 N.E.2d 746 (1st Dist.1978).

**{¶ 13}** The commission argues that an award of TTD compensation is more than a mere expectation or interest. However, even if that is true, a TTD-compensation award is not a property right that can be taken away only with the injured workers' consent. As the Tenth District pointed out, a court may vacate an award of TTD compensation in a mandamus action. 2021-Ohio-3802, 180 N.E.3d 1197, at ¶ 12. Moreover, the commission retains continuing jurisdiction over each of its cases under R.C. 4123.52(A). "[T]he commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified," R.C. 4123.52(A), if the commission finds the existence of a clear mistake of law or fact, new or changed circumstances, fraud, or error by an inferior tribunal, *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175, 2020-Ohio-1453, 155 N.E.3d 812, ¶ 11. The commission itself could, therefore, also revoke or modify an award of TTD compensation without the injured workers' consent. Hixson's award of TTD compensation was not a vested right.

### 2. *The* DiCenzo *Factors*

**{¶ 14}** Although the "vested rights" exception, outlined in *Peerless*, 164 Ohio St. 209, 210, 129 N.E.2d 467, to the general rule that a decision applies retrospectively does not apply here, we nonetheless retain discretion to apply *Klein* prospectively only:

> [A]n Ohio court has discretion to apply its decision only prospectively after weighing the following considerations: (1) whether the decision establishes a new principle of law that was not foreshadowed in prior decisions; (2) whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision; and (3) whether retroactive application of the decision causes an inequitable result.

*DiCenzo*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, at ¶ 25.

{¶ 15} The commission and Hixson argue that we indicated in *Klein* that the judgment in that case should apply prospectively only. We stated in *Klein*, "Our holding today forecloses any *continued* reliance on [the overruled statement in *Pretty Prods.*, 77 Ohio St.3d 5, 670 N.E.2d 466] in *future* temporary-total-disability cases." (Emphasis added.) *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 30.

{¶ 16} Walmart counters—and the Tenth District agreed—that when we have intended a decision to apply prospectively only, we have said so in more explicit terms that have included some form of the word "prospective." 2021-Ohio-3802, 180 N.E.3d 1197, at ¶ 19. The Tenth District and Walmart are correct that we are usually direct when limiting the application of our decisions. *See, e.g.*, *In re LMD Integrated Logistic Servs., Inc.*, 155 Ohio St.3d 137, 2018-Ohio-3859, 119 N.E.3d 1250, ¶ 27-29 (plurality opinion) (expressly discussing the *DiCenzo* factors); *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 42-43 (same).

{¶ 17} However, the absence of express "prospective only" language in *Klein* does not prevent us from evaluating that decision under the *DiCenzo* factors now. In *DiCenzo*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, at ¶ 1, we applied the three factors adopted in that case to determine that *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977), which had been decided over 30 years before *DiCenzo*, would be limited to prospective-only application. We explained that "[t]he mere passage of time, without more, does not diminish our authority to impose a prospective-only application of a court decision." *DiCenzo* at ¶ 28. We acknowledged that "prospective-only application is justified only under exceptional circumstances, and a prospective-only application of a court decision that is imposed years after its publication is an even rarer occurrence." *Id*. But we concluded that if the prior decision "presents us with the extraordinary

circumstances that satisfy the [three-factor] test, then prospective-only application may be justified." *Id.*

### a. New principle of law

**{¶ 18}** The first *DiCenzo* factor asks "whether the decision establishes a new principle of law that was not foreshadowed in prior decisions." *DiCenzo* at ¶ 25.

**{¶ 19}** Prior to *Klein*, we had established the principle of law that "a claimant who voluntarily abandons his employment is entitled to temporary-total-disability compensation if he is medically incapable of returning to work at the time of the abandonment." *Id.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 2, citing *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, and *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. We had premised our decisions in *Reitter Stucco* and *OmniSource* on a statement in *Pretty Prods.*, 77 Ohio St.3d at 7, 670 N.E.2d 466, that a claimant can abandon a former position only if he has the physical capacity for employment at the time of the abandonment. *Reitter Stucco* at ¶ 10; *OmniSource* at ¶ 10.

**{¶ 20}** But in *Klein*, we overruled *Reitter Stucco* and *OmniSource* and held that "when a workers' compensation claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, he is no longer eligible for temporary-total-disability compensation, even if the claimant remains disabled at the time of his separation from employment." *Klein* at ¶ 29. We also made clear that the statement in *Pretty Prods.* was no longer good law. *Klein* at ¶ 30. We decided *Klein* in 2018. *Reitter Stucco* and *OmniSource* dated from 2007 and 2008, respectively, and *Pretty Prods.* dated from 1996. Therefore, while *Klein* did not address an issue of first impression, it did represent a 180-degree reversal of a longstanding principle of law.

**{¶ 21}** For purposes of the *DiCenzo* analysis, that reversal equates to the establishment of a new principle of law. The "new principle" factor "is persuasive in determining whether a decision should be applied retrospectively because it gauges the foreseeability of the law being considered for retroactive application. Backward application of [a decision that establishes a new principle of law] causes great inequity to those who are burdened by unforeseen obligations." *DiCenzo*, 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, at ¶ 17. Our reversal in *Klein* of a rule that the commission had been applying in TTD-compensation cases for up to two decades is equally persuasive on that point.

**{¶ 22}** Moreover, no prior decisions foreshadowed the overruling of *Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, and *OmniSource*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. Neither the Tenth District nor the parties in *Klein* argued that we should overrule those cases—we took that action sua sponte. And none of our opinions in cases applying or citing *Reitter Stucco* or *OmniSource* prior to *Klein* foreshadowed that those decisions were in danger of being overruled. *Klein* stated a new rule governing whether injured workers could abandon their employment while temporarily and totally disabled, and our decision in *Klein* was not foreseeable. This factor therefore favors prospective-only application.

### b. Purpose behind the rule

**{¶ 23}** The second *DiCenzo* factor asks "whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision." *DiCenzo* at ¶ 25.

**{¶ 24}** In *Klein*, we stated, "The purpose of temporary-total-disability compensation is to compensate an injured employee for lost earnings during a period of disability while an injury heals." *Id.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 14. We continued, "Ordinarily, when a claimant's voluntary actions, rather than his or her industrial injury, cause a loss of wages, that claimant

is no longer eligible for temporary-total-disability compensation." *Id.* at ¶ 15. We next explained the exception to that rule that we had carved out in *Reitter Stucco* and *OmniSource*, that is, that "if a claimant is already disabled when the separation of employment occurs, he or she is not disqualified from receiving temporary-total-disability compensation." *Klein* at ¶ 16. But we then overruled *Reitter Stucco* and *OmniSource*: "Both decisions were wrongly decided at the time, they defy practical workability, and abandoning them would not create an undue hardship for those who have relied upon them." *Klein* at ¶ 17.

{¶ 25} When considering whether the two cases were wrongly decided, we said, "*Reitter Stucco* and *OmniSource* contradict a fundamental tenet of temporary-total-disability compensation: that the industrial injury must cause the worker's loss of earnings." *Klein* at ¶ 18. We explained that the rule in those cases "created at least two unintended consequences: it immunizes claimants from the consequences of their own voluntary conduct and it authorizes compensation in scenarios for which temporary-total-disability compensation was not intended." *Id.* at ¶ 21. Additionally, "it would not serve the purpose of temporary-total-disability compensation to award compensation to a worker whose own actions, and not his workplace injury, have prevented his return to his former position of employment." *Id.* at ¶ 22.

{¶ 26} When considering practical workability, we said that our "attempts to clarify and distinguish *Reitter Stucco* and *OmniSource*" over the years had only "muddied the waters" and "made the law more confusing." *Klein* at ¶ 24. The evolution of the jurisprudence had led to two sets of illogically inconsistent rules—one for terminated employees and one for employees who left the workplace voluntarily. *Id.* at ¶ 25-26. We concluded that it was "time to get rid of this arbitrary distinction." *Id.* at ¶ 26.

{¶ 27} Finally, we stated that overruling the two cases would not impose an undue hardship, because doing so "would not jeopardize any reliance interests."

*Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 27. We posited that workers currently receiving TTD compensation would be unlikely to instigate their own termination by violating work rules in the hope that they could continue to receive compensation under *Reitter Stucco*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, and *OmniSource*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. *Klein* at ¶ 27. We acknowledged that abandoning those cases "would impact future claimants who suffer an injury and then take voluntary action that precludes continued employment." *Id*. at ¶ 28. But, we said, "[e]ligibility for temporary-total-disability compensation has always depended on whether the separation from employment was injury-induced." *Id*. Therefore, "[f]ar from posing an undue hardship, overruling *Reitter Stucco* and *OmniSource* would restore consistency to our jurisprudence." *Klein* at ¶ 28.

{¶ 28} Three principles emerge from our discussion in *Klein*. First, the purpose of TTD compensation is to replace wages lost *because of* an industrial injury. Second, we reversed our prior holdings in order to eliminate an illogical double-standard and to establish a consistent rule to be applied going forward. And third, our *Klein* decision evinced a purpose to protect reliance interests.

{¶ 29} As Walmart points out, applying *Klein* retroactively would promote the purpose behind TTD compensation itself, by declaring that benefits paid to injured workers were improper overpayments when those workers' voluntary actions, rather than their work injuries, led to their wage losses. However, we balance that point against the purposes espoused in our decision to abandon *Reitter Stucco* and *OmniSource*: to harmonize the jurisprudence of voluntary abandonment going forward while protecting reliance interests. As the commission points out, applying *Klein* retroactively would not promote those purposes.

{¶ 30} This factor therefore presents a mixed result: applying *Klein* retroactively would promote the purpose behind the voluntary-abandonment rule,

but it would not promote the purpose behind the rule change we brought about in *Klein*.

### c. Inequitable result

{¶ 31} The third *DiCenzo* factor asks "whether retroactive application of the decision causes an inequitable result." *Id*., 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, at ¶ 25. This factor is concerned, in part, with " 'avoiding injustice in cases dealing with questions having widespread ramifications for persons not parties to the action.' " *Id*. at ¶ 12, quoting *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 9, 482 N.E.2d 575 (1985) (Douglas, J., concurring).

{¶ 32} In *DiCenzo*, we determined that the decision in *Temple*, 50 Ohio St.2d 317, 364 N.E.2d 267, should apply prospectively only. *DiCenzo* at ¶ 48. In *Temple*, this court had stated for the first time that nonmanufacturing sellers of a defective product could be liable for injuries the product caused. *DiCenzo* at ¶ 47. We explained that a seller could not have foreseen that the *Temple* decision, if applied retroactively, would subject a seller to liability for a transaction that had occurred decades earlier. *DiCenzo* at ¶ 47. This, we said, rendered retroactive application of *Temple* inequitable:

> [N]onmanufacturing sellers of asbestos * * * could not have foreseen that these products, distributed from the 1950s to the 1970s, could decades later result in [liability] for injuries caused by that product. Imposing such a potential financial burden on these nonmanufacturing suppliers years after the fact for an obligation that was not foreseeable at the time would result in a great inequity.

*DiCenzo* at ¶ 47.

{¶ 33} Here, as the commission points out, retroactive application of *Klein* would implicate the awards of many claimants who are not parties to this action

and were not parties in *Klein*: "it would open the door for those [claimants'] rights to be re-adjudicated in mandamus" even though the awards were proper based on the law at the time. And the implications would be widespread, because the commission applied the abandoned rule for 22 years—from 1996 through 2018. This would negatively affect the reliance interests of injured workers whose TTD-compensation awards have long been paid out and spent—in contravention of our statement in *Klein* that our decision in that case "would not jeopardize any reliance interests," *Id.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 27. This factor militates in favor of prospective-only application.

### d. Conclusion regarding the DiCenzo factors

{¶ 34} In sum, in *Klein*, we took an unforeseeable action to harmonize our voluntary-abandonment jurisprudence. We expressly stated that our action would harm no reliance interests. Our concerns were phrased in forward-looking terms; we made no mention of truing up claims that had already been adjudicated and paid under the prior rule. Application of the three *DiCenzo* factors leads us to conclude that *Klein* should be applied prospectively only.[1]

### III. CONCLUSION

{¶ 35} For the foregoing reasons, we reverse the Tenth District's judgment and deny the writ.

Judgment reversed.

---

1. Application of *Klein* has a limited window. The General Assembly has since enacted R.C. 4123.56(F), effective on September 15, 2020, which states:

> If an employee is unable to work or suffers a wage loss as the direct result of an impairment arising from an injury or occupational disease, the employee is entitled to receive compensation under this section, provided the employee is otherwise qualified. If an employee is not working or has suffered a wage loss as the direct result of reasons unrelated to the allowed injury or occupational disease, the employee is not eligible to receive compensation under this section. It is the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., concurs in judgment only.

KENNEDY, J., dissents, with an opinion joined by DEWINE, J.

_____

**KENNEDY, J., dissenting.**

{¶ 36} This court's decision in *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, did not change the law that applies to this case. In fact, *Klein* does not control the outcome of this case. And because *Klein* does not apply, this court should exercise restraint and should not issue an advisory opinion on how *Klein* should be applied in future cases to parties who are not presently before this court. Therefore, I would affirm the judgment of the Tenth District Court of Appeals. Because the majority does otherwise, I dissent.

{¶ 37} The parties and the majority frame the issue in this case as whether the holding in *Klein* should be applied retroactively or prospectively, but that misstates the question before us. The issue before this court is whether a person who voluntarily retires is entitled to receive temporary-total-disability compensation.

**Facts and Procedural History**

{¶ 38} Appellant Dianna Hixson was not terminated for violating a workplace rule. She voluntarily retired, effective March 6, 2018. Prior to retiring, Hixson sought temporary-total-disability compensation after she was injured while working for appellee, Walmart, Inc. A district hearing officer denied her claim, finding that she was totally and temporarily disabled due to conditions that he disallowed in the claim. A staff hearing officer concluded that Hixson was entitled to temporary-total-disability compensation but only through the date she had retired, finding her retirement to be age related and therefore a voluntary abandonment of her employment. Relying on *State ex rel. Pretty Prods., Inc. v.*

*Indus. Comm.*, 77 Ohio St.3d 5, 670 N.E.2d 466 (1996), appellant Industrial Commission determined that Hixson did not voluntarily abandon her employment, because she was temporarily and totally disabled when she retired. It therefore awarded her temporary-total-disability compensation continuing after her March 6, 2018 retirement.

**{¶ 39}** On September 27, 2018, this court decided *Klein*, which overruled as inconsistent with the voluntary-abandonment rule the part of *Pretty Prods.* on which the commission had relied. *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 30. The court also overruled two decisions that had followed *Pretty Prods.*: *State ex rel. Reitter Stucco, Inc. v. Indus. Comm.*, 117 Ohio St.3d 71, 2008-Ohio-499, 881 N.E.2d 861, and *State ex rel. OmniSource Corp. v. Indus. Comm.*, 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. *Klein* at ¶ 29. *Pretty Prods.*, *Reitter Stucco*, and *OmniSource* all involved injured workers who were discharged for violating workplace rules.

**{¶ 40}** In Walmart's action, the Tenth District granted a writ of mandamus compelling the commission to terminate the award of temporary-total-disability compensation after March 6, 2018. It concluded that *Klein*'s holding applied retroactively to Hixson's claim and that retroactive application of its holding neither impaired vested rights nor resulted in widespread injustice to third parties. 2021-Ohio-3802, 180 N.E.3d 1197, ¶ 12, 17.

## Law and Analysis

### *The Voluntary-Abandonment Rule*

**{¶ 41}** The voluntary-abandonment rule emanates from the principle that "[a]ll forms of death and disability benefits provided by R.C. Chapter 4123 are intended to compensate 'for loss sustained on account of the injury.' " *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 35, quoting R.C. 4123.54(A). The court recognized that under that

section, "a causal relationship must exist between the employee's industrial injury and the loss that the requested benefit is designed to compensate." *Id.*

{¶ 42} R.C. 4123.56 provides for temporary-total-disability compensation "when an industrial injury prevents a claimant from performing the duties of his position of employment," *State ex rel. Floyd v. Formica Corp.*, 140 Ohio St.3d 260, 2014-Ohio-3614, 17 N.E.3d 547, ¶ 13, and temporary-total-disability compensation is "designed 'to compensate an injured employee for the loss of earnings which he incurs while the injury heals,' " *McCoy* at ¶ 35, quoting *State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42, 44, 517 N.E.2d 533 (1987). To qualify for temporary-total-disability compensation, the injured worker is required to show that "a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings. In other words, it must appear that, but for the industrial injury, the claimant would be gainfully employed." *Id.*

{¶ 43} The court has further explained that the causal connection between the workplace injury and the loss of wages is severed by the worker's departure from employment for reasons unrelated to that injury. *State ex rel. Jacobs v. Indus. Comm.*, 139 Ohio St.3d 86, 2014-Ohio-1560, 9 N.E.3d 999, ¶ 18; *McCoy* at ¶ 38. An injured worker is not entitled to temporary-total-disability compensation when he or she voluntarily abandons employment by quitting, *State ex rel. James v. Wal-Mart Stores, Inc.*, 149 Ohio St.3d 700, 2017-Ohio-1426, 77 N.E.3d 952, ¶ 18; resigning on two weeks' notice, *State ex rel. Bilaver v. Indus. Comm.*, 131 Ohio St.3d 132, 2012-Ohio-26, 961 N.E.2d 675, ¶ 5; retiring, *State ex rel. Corman v. Allied Holdings, Inc.*, 132 Ohio St.3d 202, 2012-Ohio-2579, 970 N.E.2d 929, ¶ 6-7; being incarcerated, *Ashcraft* at 44-45; or being terminated from employment for violating work rules, *State ex rel. Parraz v. Diamond Crystal Brands, Inc.*, 141 Ohio St.3d 31, 2014-Ohio-4260, 21 N.E.3d 286, ¶ 15-16.

*The* Pretty Prods. *Rule and* Klein

**{¶ 44}** In *Pretty Prods.*, the court added confusion to the voluntary-abandonment rule by stating that " 'a claimant can abandon a former position or remove himself or herself from the work force only if he or she has the physical capacity for employment at the time of the abandonment or removal.' " 77 Ohio St.3d at 7, 670 N.E.2d 466, quoting *State ex rel. Brown v. Indus. Comm.*, 68 Ohio St.3d 45, 48, 623 N.E.2d 55 (1993). The court borrowed this language from *Brown*, a decision explaining that when a worker is *permanently* and *totally* disabled under R.C. 4123.58, the worker is incapable of returning to work and therefore can never voluntarily abandon it, *Brown* at 48.

**{¶ 45}** *Pretty Prods.* inadvertently took caselaw applicable to permanent-total-disability compensation, which continues until death and therefore cannot be terminated by the voluntary abandonment of employment, and applied it to temporary-total-disability compensation, which the court has long recognized can be terminated if the worker voluntarily abandons employment. The *Pretty Prods.* rule therefore erroneously indicated that temporary-total-disability compensation may be available even when the claimant's voluntary conduct has severed the causal connection between the workplace injury and the loss of wages, so long as the injured worker is incapable of work at the time of the separation from employment.

**{¶ 46}** The court corrected this mistake in *Klein* and clarified that an injured worker who voluntarily abandons employment is not eligible for temporary-total-disability compensation. *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 16-17.

Klein *Did Not Change the Law Applicable to Hixson's Claim*

**{¶ 47}** But even before the court decided *Klein*, it had applied the *Pretty Prods.* rule only in cases involving workers who were terminated for violating workplace rules. *See Reitter Stucco,* 117 Ohio St.3d 71, 2008-Ohio-499, 881

N.E.2d 861; *OmniSource,* 113 Ohio St.3d 303, 2007-Ohio-1951, 865 N.E.2d 41. This court expressly declined to extend the *Pretty Prods.* rule to an injured worker who voluntarily quit his job in *State ex rel. Hildebrand v. Wingate Transport, Inc*., 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, ¶ 25.

{¶ 48} Consequently, *Klein* did not change the law that applies to Hixson's claim, because this court has never applied the *Pretty Prods.* rule to an injured worker like Hixson who voluntarily elected to leave a job while temporarily and totally disabled.

{¶ 49} We therefore do not have a party before the court who has been affected by the holding in *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386. Hixson was not terminated for violating work rules, so she loses nothing by the overruling of the *Pretty Prods.* rule. The majority speculates that "retroactive application of *Klein* would implicate the awards of many claimants who are not parties to this action and were not parties in *Klein*." Majority opinion, ¶ 33. But it fails to follow through on the analysis and provide reasoning and authority proving its conjecture that temporary-total-disability compensation awards that have "long been paid out and spent," *id*. at ¶ 33, are vulnerable if *Klein* applies retroactively. Rather than short-circuiting the adversarial process by issuing an advisory opinion deciding how *Klein* will be applied in future cases, we should wait until we have parties before the court who are affected by the overruling of the *Pretty Prods.* rule and who can provide the argument and citation to authority necessary for our adversarial system of adjudication to function. After all, it is "the duty of this court[ ] to decide actual controversies where the judgment can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter at issue in the case before it." *Travis v. Pub. Util. Comm. of Ohio*, 123 Ohio St. 355, 359, 175 N.E. 586 (1931).

**{¶ 50}** Therefore, it is not necessary to decide at this time whether *Klein* should be applied prospectively only. But for the following reasons, the majority's conclusion that *Klein* should be applied prospectively is incorrect.

*Retroactive or Prospective Application*

**{¶ 51}** This court has explained that "[t]he general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 210, 129 N.E.2d 467 (1955). As the majority correctly recognizes, Hixson did not have a vested right to temporary-total-disability compensation.

**{¶ 52}** Notably, this court in *Klein* did not apply its holding prospectively only. Instead, it concluded that the injured worker was not eligible for temporary-total-disability compensation once he had voluntarily abandoned his employment even though he was temporarily and totally disabled at the time he resigned. The court could have limited its holding to future cases, but it did not.

*The* DiCenzo *Test*

**{¶ 53}** Although this court's majority opinion in *Klein* did not declare that its holding applies prospectively only, there is caselaw saying that this court can do so years or even decades later. In *DiCenzo v. A-Best Prods. Co., Inc.*, this court considered whether a previously decided case should be applied prospectively only, and it held:

> [A]n Ohio court has discretion to apply its decision only prospectively after weighing the following considerations: (1) whether the decision establishes a new principle of law that was not foreshadowed in prior decisions; (2) whether retroactive application

18

of the decision promotes or retards the purpose behind the rule defined in the decision; and (3) whether retroactive application of the decision causes an inequitable result.

120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, ¶ 25.

{¶ 54} None of the *DiCenzo* factors weigh in favor of applying *Klein*'s holding prospectively only. Regarding the first factor, *Klein* did not establish a new principle of law that was not foreshadowed in prior decisions. As explained above, before *Klein*, this court had limited the *Pretty Prods.* rule to cases involving injured workers who had been discharged for violating a workplace rule and had expressly declined to extend it to claimants who elected to leave a job. *Hildebrand*, 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, at ¶ 23-25; *see also Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 25 (noting the distinction between discharge and voluntary retirement). Further, as this court pointed out in *Klein*, the *Pretty Prods.* rule "contradict[ed] a fundamental tenet of temporary-total-disability compensation: that the industrial injury must cause the worker's loss of earnings." *Klein* at ¶ 18. It was inconsistent with the established principle that "when a claimant removes himself from employment for reasons unrelated to the work-related injury, he is no longer eligible for temporary-total-disability compensation." *Id.* at ¶ 19. And applying this principle, the court has held that an injured worker is not entitled to temporary-total-disability compensation when he or she had previously voluntarily abandoned the workforce by retiring. *Corman*, 132 Ohio St.3d 202, 2012-Ohio-2579, 970 N.E.2d 929, at ¶ 6-7; *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 11.

{¶ 55} It was foreseeable that this court would get rid of the "arbitrary distinction," *Klein* at ¶ 26, between the way a discharge and a resignation were treated for purposes of temporary-total-disability compensation, and it was foreseeable that this court would decide that *Pretty Prods.*, *Reitter Stucco*, and

*OmniSource* had misstated and confused the law. The opinion concurring in judgment in *Klein* explained that the creation of the *Pretty Prods.* rule was an accident: this court in *Pretty Prods.* inadvertently took a concept from permanent-total-disability compensation—in which a worker is never capable of returning to work and therefore can never abandon it—and overlaid it on temporary-total-disability compensation. *Klein* at ¶ 49 (Kennedy, J., concurring in judgment only). The *Pretty Prods.* rule was inconsistent with the language of R.C. 4123.54(A), the long-standing voluntary-abandonment rule, and the principle that temporary-total-disability compensation is not available unless there is a causal relationship between the workplace injury and the loss of wages that the benefit is designed to replace. It was only a matter of time until the *Pretty Prods.* rule was overturned.

**{¶ 56}** Regarding the second *DiCenzo* factor, retroactive application of *Klein* promotes the purpose behind the rule defined in the decision. The rule is that temporary-total-disability compensation is available to replace wages lost on account of a workplace injury. The rule's purpose is to provide compensation to those whose workplace injuries caused a loss of wages. Applying *Klein* prospectively only will run counter to this purpose by allowing those who are not statutorily entitled to temporary-total-disability compensation to receive it anyway.

**{¶ 57}** The majority posits that a purpose of the rule defined in *Klein* was "to harmonize the jurisprudence of voluntary abandonment going forward *while protecting reliance interests*." (Emphasis added.) Majority opinion at ¶ 29. But protecting reliance interests is not a purpose of the voluntary-abandonment rule. And rather than acting to protect reliance interests, this court in *Klein* discounted the notion that there were any reliance interests to protect: "It is highly unlikely that an injured worker currently receiving temporary-total-disability compensation would instigate his termination by violating a workplace rule based on the hope that he would continue to receive benefits under *Reitter Stucco* and *OmniSource*." *Klein*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, at ¶ 27. This court

20

decided that there would be no undue hardship if it overruled those decisions, *id.* at ¶ 28, exactly because doing that "would not jeopardize any reliance interests," *id.* at ¶ 27.

{¶ 58} The third *DiCenzo* factor—whether retroactive application of the decision causes an inequitable result—also does not weigh in favor of applying *Klein* prospectively only. Again, as this court recognized in *Klein*, it is highly unlikely that any injured worker would voluntarily cause the end of his or her employment—by violating a workplace rule or resigning—with the expectation of receiving a windfall in temporary-total-disability compensation. *See Klein* at ¶ 27. In this case, for example, Hixson could not have relied on the *Pretty Prods.* rule when she retired. Before she retired, the *Pretty Prods.* rule was limited by this court to circumstances in which the injured employee had violated a workplace rule. *See Hildebrand*, 141 Ohio St.3d 533, 2015-Ohio-167, 26 N.E.3d 798, at ¶ 23-25.

{¶ 59} This court recognized in *Klein* that "abandoning *Reitter Stucco* and *OmniSource* would impact future claimants who suffer an injury and then take voluntary action that precludes continued employment," but it concluded that there would be no inequity, *Klein* at ¶ 28. It pointed out that "even after *Reitter Stucco* and *OmniSource*, we adhered to the long-standing rule that when a claimant chooses for reasons unrelated to his industrial injury not to return to his former position of employment, the claimant is considered to have voluntarily abandoned his employment and is no longer eligible for temporary-total-disability compensation." *Id.* There is no inequitable result in denying claimants temporary-total-disability compensation when they were not entitled to it in the first place.

{¶ 60} Consequently, proper weighing of the *DiCenzo* factors does not support the majority's decision to apply *Klein* prospectively only.

### Conclusion

{¶ 61} " '[C]ourts are essentially passive instruments of government.' * * * They 'do not, or should not, sally forth each day looking for wrongs to right. [They]

wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.' " (Brackets added in *Sineneng-Smith*.) *United States v. Sineneng-Smith*, ___ U.S. ___, ___, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020), quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir.1987) (Arnold, J., concurring in denial of rehearing en banc). The narrow question before this court is whether Hixson is entitled to temporary-total-disability compensation after she voluntarily retired from her job at Walmart. At the time she retired, the answer Ohio law provided was no, and following the court's decision in *Klein*, the answer is still no.

{¶ 62} I therefore would affirm the judgment of the Tenth District Court of Appeals. Because the majority does not, I dissent.

DeWINE, J., concurs in the foregoing opinion.

_____

Roetzel & Andress, L.P.A., Douglas E. Spiker, and Timothy J. Webster, for appellee.

Nager, Romaine, & Schneiberg Co., L.P.A., and James J. Zink, for appellant Dianna Hixson.

Dave Yost, Attorney General, and Jacquelyn McTigue, Assistant Attorney General, for appellant Industrial Commission of Ohio.

_____